Annette B. RICH, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 13742.

District of Columbia Court of Appeals.

Argued Aug. 7, 1979.

Decided Oct. 1, 1979.

Joseph D. Bulman, Washington, D. C., with whom Joel DuBoff and Arthur S. Feld, Washington, D. C., were on brief, for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Acting Corp. Counsel, Washington, D. C., when the brief was filed, Louis P. Robbins, Principal Deputy Corp. Counsel, Washington, D. C., when the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for appellee.

Before NEBEKER, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

Appellant seeks to reinstate a jury verdict in her favor which was set aside by the granting of a motion for a judgment notwithstanding the verdict and, alternatively, a new trial. We reverse both the judgment notwithstanding the verdict and the grant of a new trial, but remand the case for the trial court's consideration of (1) whether a new trial is warranted because of the amount of damages awarded, and (2) a possible remittitur.

## I

On the night of December 2, 1975, appellant was walking north on 28th Street, N.W., in Georgetown. She crossed Olive Street, stepped up on the curb of the northwest corner of the intersection, and walked "a few steps." She then tripped and fell to the sidewalk, fracturing her right shoulder. Appellant described her fall as follows: "All of a sudden one leg went into a depression and the other foot hit something metal, and it was very fast. I just flew right through the air above this hole and metal and I landed on my right side flat on the ground . . . ." At the time of the occurrence, appellant did not see what caused her to fall.

Appellant returned to the corner one week later. She observed two holes in the brick sidewalk which were near a manhole cover. The holes resulted from several of the sidewalk's bricks being missing. Appellant later photographed the holes in mid-March of 1976. Those photographs, which were admitted into evidence, were identified at trial by appellant, who stated that they accurately depicted the sidewalk as it existed on December 9, 1975—one week after the fall.

Gotz Schreiber, another resident of the neighborhood, also identified the scene depicted in the photographs. Schreiber testi-

fied that during 1975 and part of 1976 he walked past the northwest corner of 28th and Olive Streets every day on his way to and from work. He stated that from approximately the middle of November of 1975 through the winter of 1976 he noticed that near one of the manhole covers on the corner there were "a number of bricks either loose or totally missing so that there would be about a two or three inch deep hole, rather sizeable hole in the sidewalk there." He also stated that the photographs were a "fair representation [of the scene] except that occasionally there would be another loose brick in the hole which the next day wouldn't be there. Apparently some passersby might try to fill the loose brick back in and they would be gone again. So the actual hole would look slightly different from the one day to the next . . . ." Schreiber added that, nevertheless, the hole was always wider than the width of one brick.

Appellant's description of the fall, as well as her and Schreiber's testimony concerning the photographs, was essentially the case as to liability. The defendant District of Columbia did not put on any testimony. After a motion for a directed verdict was made by the District and denied, the matter went to the jury, which returned a verdict for appellant in the amount of $55,000.[1] Subsequently, the District moved for judgment notwithstanding the verdict or, in the alternative, a new trial or a remittitur. Several months later, pursuant to Super.Ct. Civ.R. 50(c), the trial judge issued a written order granting the motion for judgment notwithstanding the verdict and, alternatively, the motion for a new trial. The court stated:

A review of the record reveals that plaintiff failed to establish what caused her to fall and sustain injuries. Plaintiff candidly stated that she did not see what caused her to fall. Although she testified

1. In the ad damnum clause of her complaint, plaintiff sought $50,000. Since the verdict exceeded that demand by $5,000, plaintiff moved to amend the ad damnum clause. In light of the trial court's disposition of the District's post-trial motions, it did not rule on plaintiff's

request. On remand, that question will be subject to consideration. See Super.Ct.Civ.R. 54(c); compare Gleason v. L. Frank Co., D.C. App., 328 A.2d 96, 98 (1974), with Randolph v. Franklin Investment Co., D.C.App., 398 A.2d 340, 350 (1979) (en banc).

to stepping into a "depression" in the obviously less-than-even surface of the brick sidewalk involved, the record does not support the conclusion that. that "depression" was one of the two holes depicted in the photographs admitted into evidence, nor does plaintiff claim to know which, if either, of those holes caused her to fall.

It appears that defendant's motion for a directed verdict ought to have been granted, that the verdict was contrary to the weight of the evidence, and that the photographs depicting holes in the sidewalk ought not to have been admitted into evidence. The first of the foregoing conclusions warrants the granting of defendant's motion for judgment notwithstanding the verdict, and the latter two are the bases for the Court's granting of the alternative motion for new trial.

## II

One of the reasons which the trial judge gave for granting a new trial was his belief that it was erroneous to have admitted into evidence the photographs taken by appellant of the scene. Although the judge focused on this aspect of the proceedings in reference to the motion for a new trial, the photographic evidence bears as well on the issue of granting a judgment notwithstanding the verdict. Therefore, we consider initially the question of the propriety of the introduction of the photographs.

 Unquestionably, the admissions of photographs "rests within the sound discretion of the trial judge, 'who is in the best position to determine whether [the photographs] properly reflect the testimony or the circumstances sought to be depicted.'" *March v. United States*, D.C.App., 362 A.2d 691, 704 (1976), *quoting Mann v. Robert C. Marshall, Ltd.*, D.C.App., 227 A.2d 769, 771 (1967). However, the guidelines to be followed by a trial judge in determining admissibility are quite broad:

"It makes no difference, of course, when a picture was taken, if the evidence shows that the conditions are the same as when the accident occurred, or when the evidence shows the difference, if there is any." It has even been held that it is not necessary to prove the time of taking photographs where there has been no change in conditions. The real test is whether the photographs represent with fair accuracy the place of the happening and the physical conditions surrounding it. And photographs are admissible even when they contain points of difference between the time of taking and the time of the accident or injury, provided such differences are disclosed by testimony and made clear to the jury. [*Washington Coca-Cola Bottling Works v. Kelly*, D.C. Mun.App., 40 A.2d 85, 87 (1944) (footnotes omitted).]

*See Mann v. Robert C. Marshall, Ltd., supra*, at 771; *Altemus v. Talmadge*, 61 App. D.C. 148, 153, 58 F.2d 874, 879 (1932). Additionally, the testimony necessary to inform the jury of the accuracy of photographs may be provided by a witness who is not the photographer. *Simms v. Dixon*, D.C.App., 291 A.2d 184, 186 (1972); C. McCormick, Evidence § 214, at 530–31 (1972). Thus, reduced to its essence, the test of admissibility "is whether the photographs accurately represent the facts allegedly portrayed by them." *Simms v. Dixon, supra*, at 873; *see D.C. Transit System, Inc. v. Acors*, D.C.App., 293 A.2d 871, 873 (1972).

██ The photographs in this case meet that standard. They were asserted to be of the sidewalk at the northwest corner of 28th and Olive Streets, N.W., and were identified as such by appellant—the photographer—who testified as to the time she took them and that they accurately represented the "place of the happening" as she observed it a week after her fall. In similar fashion, Mr. Schreiber stated that the photographs correctly portrayed that area of the sidewalk, and that the holes shown in the pictures were in existence on the day of appellant's accident. Additionally, Schreiber made it clear to the jury that although the size of the holes would vary somewhat from time to time, on the day in question they were essentially the same size as the

ones depicted in the photographs. In sum, the witness' testimony, which was thoroughly tested on cross-examination, demonstrated that the photographs accurately represented the facts allegedly portrayed by them. Accordingly, the photographs were properly admitted at trial.[2]

### III

Given the propriety of the photographic evidence, the question becomes whether it, combined with the other evidence presented by appellant, was sufficient to take the case to the jury. If so, the judgment notwithstanding the verdict was granted erroneously.

Under Super.Ct.Civ.R. 50(b), whenever at the close of the evidence a motion for a directed verdict is not granted, the court is considered to have submitted the case to the jury "subject to a later determination [on motion for judgment notwithstanding the verdict] of the legal questions raised by the motion." Thus, in determining whether or not to grant a motion for a judgment notwithstanding the verdict, the trial court should entertain the same considerations as it does in ruling on a motion for a directed verdict. *See, e. g., Proctor v. District of Columbia*, D.C.App., 273 A.2d 656, 659 (1971); *McSweeny v. Wilson*, D.C. Mun.App., 48 A.2d 469, 470 (1946). The test to be applied on the latter motion has been oft-stated. For example:

> The rule applicable in the District of Columbia on a motion for a directed verdict, in an action founded upon negligence, is that the evidence must be construed most favorably to the plaintiff; to this end he is entitled to the full effect of every legitimate inference therefrom; if upon the evidence, so considered, reasonable men might differ, the case should go to the jury; if, on the other hand, no reasonable man could reach a verdict in favor of the plaintiff, the motion should be granted; a mere scintilla of evidence is not sufficient; the question is not

whether there is any evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party upon whom the *onus* of proof is imposed; the burden being upon the plaintiff to establish the negligence and injury alleged, if the evidence fails adequately to support either element the motion should be granted. [*Shewmaker v. Capital Transit Co.*, 79 U.S.App.D.C. 102, 103, 143 F.2d 142, 143 (1944) (footnote omitted).]

Although that formulation is well known, it must be kept in mind that it is the unusual case in which only one conclusion reasonably could be drawn from the evidence, and in which negligence, contributory negligence, and proximate cause will not be questions of fact for the jury. *See, e. g., Aqui v. Isaac*, D.C.App., 342 A.2d 370, 371–72 (1975); *Tan Top Cab Co. v. Shiller*, D.C.Mun.App., 125 A.2d 68, 69 (1956); *Shu v. Basinger*, D.C.Mun.App., 57 A.2d 295, 295–96 (1948). The reason for this is that although a scintilla of evidence of negligence (or injury) is insufficient, most plaintiffs present more than a scintilla, and the law does not require proof of negligence to a certainty. Rather, the law requires only that the evidence, when viewed most favorably for the plaintiff, indicate a reasonable probability of negligence on the part of the defendant. *See Simpson v. Logan Motor Company*, D.C.App., 192 A.2d 122, 123–24 (1963); *Insurance Company of North America v. Ruppert*, D.C.Mun.App., 156 A.2d 796, 797 (1959).

In this instance the trial judge seems to have required too high a standard of proof. As noted above, in his order the judge stated that plaintiff

> failed to establish what caused her to fall and sustain injuries. Plaintiff candidly stated that she did not see what caused her to fall. Although she testified to stepping into a "depression" in the obviously less-than-even surface of the brick

---

2. Indeed, it likely would have been an abuse of discretion not to have admitted them. *See D.C. Transit System, Inc. v. Acors, supra*, at 873–74.

sidewalk involved, the record does not support the conclusion that that "depression" was one of the two holes depicted in the photographs admitted into evidence, nor does plaintiff claim to know which, if either, of those holes caused her to fall.[3] It is evident from that ruling that the court granted the motion for a judgment notwithstanding the verdict because appellant had not established conclusively that one of the holes on the corner was the hole into which she stepped. However, such a quantum of proof is not necessary. Appellant need only have adduced evidence from which a jury reasonably could infer that one of the holes in the brick sidewalk was the cause of her fall. We believe that burden was met by appellant.

■ Appellant's and Schreiber's testimony, taken in conjunction with the photographs, allows the inference that on the night of the accident there were two sizeable holes in the brick sidewalk immediately next to a metal manhole cover, which, in turn, was a short distance away from the curbstone of the northwest corner of the intersection of 28th and Olive Streets.[4] Furthermore, from the photographs and appellant's description of her fall, a jury permissibly could conclude that one of those

holes was the cause of the occurrence. To reiterate, appellant testified:

> And I stepped up on the curb and I walked a few steps . . . . All of a sudden one leg went into a depression and the other foot hit something metal . . . . I just flew through the air above this hole and metal and I landed on my right side flat on the ground. . .

Although appellant's description of how far she walked from the curb is somewhat ambiguous, the distance covered in "a few steps" is readily understandable in common experience, and when one (a juror) looks at the pictures, "a few steps" could place appellant at the location of the holes in the sidewalk.[5] Similarly, appellant's statement that one leg went into a depression and her other foot hit something "metal" is consistent with the photographs in that if one foot went into one of the holes depicted, a metal manhole cover (which was shown as being adjacent to the holes) likely would be the next object struck by the opposite foot.

■ The foregoing inferences as to the cause of appellant's fall are both reasonable and supported by the evidence. They do not require undue speculation.[6] Therefore,

---

3. In its motion for a new trial as well as in its brief on appeal, the District places a good deal of emphasis on appellant's use of the word "depression" in describing what she stepped into. It asserts in its brief that "depression" is a "vague characterization which could be reasonably applicable to a variety of surface undulations in a brick sidewalk in Georgetown." And, the District adds, this court in *Proctor v. District of Columbia, supra,* recognized that such "undulations" are not the stuff of liability. In *Proctor,* however, the court was not referring to a sidewalk with several missing bricks, as is the case here. Rather, the court was concerned only with a brick which stood one-quarter of an inch above the surrounding bricks. Additionally, although appellant did describe the cause of her fall as a depression, she also called it a "hole." We note that in a similar case, the circuit court referred to a hole in a sidewalk as a "depression." *Altemus v. Talmadge, supra,* 61 App.D.C. at 150, 58 F.2d at 876.

4. Appellant testified that from her observation of the photographs, the holes appeared to be "maybe two yards" from the corner. That may or may not have been an accurate estimate.

The jurors, however, could observe the pictures and gauge the distance for themselves.

5. At one point appellant estimated that she may have fallen "four or five yards" from the curb. That testimony is not necessarily inconsistent with her statement that she walked a few steps from the curb.

6. This court's discussion in *Simpson v. Logan Motor Co., supra,* of the case of *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946), is instructive on the question of what reasonably may be inferred by a jury:

> In *Lavender v. Kurn,* a switch tender was found dead alongside defendant's railroad tracks. The evidence showed he had been struck in the head by some object which fractured his skull and caused his death. There was no eye witness. It was shown that at the time the injury occurred a train passed equipped with a mail hook which, if it was extended, could have struck the deceased and inflicted the injury. The question was raised as to whether the jury could reasonably infer from these facts that the hook

the case properly was submitted to the jury and it was erroneous to grant the motion for a judgment notwithstanding the verdict.

## IV

Our holding that the trial judge erred in granting judgment notwithstanding the verdict does not mean that his alternative granting of the motion for a new trial necessarily was erroneous. The respective motions are tested under different standards. Thus, even when there is evidence sufficient to support a verdict, a judge nevertheless may set aside that verdict. *See, e. g.*, 11 Wright & Miller, Federal Practice and Procedure: Civil § 2806, at 43, and cases cited therein. The judge's role in passing on these motions was addressed in *Capital Transit Co. v. Crusade*, D.C.Mun. App., 68 A.2d 207 (1949). The trial judge in *Crusade* originally had granted a motion for judgment notwithstanding the verdict and denied a motion for new trial. On appeal, this court's predecessor vacated the judgment notwithstanding the verdict, and ordered the trial court to reinstate the verdict and consider the motion for a new trial. *Crusade v. Capital Transit Co.*, D.C.Mun. App., 63 A.2d 878 (1949). On remand, the trial judge believed that regardless of the merits of the case, since the appellate court had held that the judgment notwithstanding the verdict had been erroneously entered, he had no choice but to deny the motion for new trial. On the second appeal, that perfunctory denial was reversed, and the trial court was directed to consider the motion for a new trial on its merits. In reaching that conclusion, the court quoted with approval from *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 354 (4th Cir. 1941):

> struck and killed the deceased. It was not shown that the hook was in fact extended at the time and place of the deceased's injury, and it did appear that, except for an elevation in one place in the ground along the track, the hook, even if extended, was too high to have struck the deceased standing on the ground. The Court held that the case, on this evidence, was properly submitted to the jury, and that it could reasonably be inferred that the death was caused by the extended hook. The Court said:

"The distinction between the rules to be followed in granting a new trial and directing a verdict were stated by us with some care in *Garrison v. United States*, 4 Cir., 62 F.2d 41, 42, from which we quoted with approval in the later case of *Roedegir v. Phillips*, 4 Cir., 85 F.2d 995, 996, as follows: 'Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. * * * Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. * * * Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice.' " [68 A.2d at 210 (footnote and citations omitted).]

Additionally, necessarily implicit in the fact that a trial judge may set aside a verdict as

" * * * Whenever facts are in dispute or the evidence is such that fairminded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. * * * " [192 A.2d at 124, *quoting* 327 U.S. at 653, 66 S.Ct. 740 (footnote omitted).]

contrary to the weight of the evidence is the concept that in considering a motion for a new trial the judge must consider all of the evidence and is not required to view the evidence in a light most favorable to the non-moving party. 11 Wright & Miller, *supra*, § 2806 at 43–44 & n.60.

In this case, the trial judge gave two reasons for alternatively granting the motion for a new trial: (1) "that the verdict was contrary to the weight of the evidence, and" (2) "that the photographs depicting holes in the sidewalk ought not to have been admitted into evidence." The judge did not indicate that he believed his action was necessary to prevent a miscarriage of justice. Nor did he reach the alternative ground advanced by the District that the damages were excessive.

We have expressed our conclusion that the photographs were properly admitted into evidence. We therefore now consider whether the trial judge was correct in granting a new trial because he believed the verdict was against the weight of the evidence.

■■■■ Our scope of review in such a case is limited to whether there has been an abuse of discretion. *See, e. g., Aqui v. Isaac, supra*, 342 A.2d at 372; *Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 112, 409 F.2d 145, 147 (1969). In the past that standard of review had been applied so lightly that a trial court's decision to grant a new trial essentially was unassailable. *Vander Zee v. Karabatsos*, 191 U.S.App.D.C. 200, 205, 589 F.2d 723, 728 (1978). For example, in *Bennett v. D.C. Transit System, Inc.*, 111 U.S.App.D.C. 411, 298 F.2d 325 (1962), the court stated that "the ruling of a trial judge on an alternative motion for a new trial is ordinarily not reviewable . . . . It is appropriate that [the judge's] discretion be respected . . . ." (*Ibid.*, footnote omitted.) This discretion was said to be appropriate because of the trial judge's ability to "view the proceedings in a perspective peculiarly available to him alone." *Ibid., quoting Cone v. West Virginia Paper Co.*, 330 U.S. 212, 216, 67 S.Ct. 752, 91 L.Ed. 849 (1947).

That is, "the judge . . . saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." 330 U.S. at 216, 67 S.Ct. at 755. The trial judge's perspective is, of course, still the same today. *See, e. g., Queen v. D.C. Transit System, Inc.*, D.C. App., 364 A.2d 145, 148 (1976). However, appellate courts' perceptions of their review of new trial determinations more recently have taken on a somewhat broader dimension.

In *Taylor v. Washington Terminal Co., supra*, the United States Court of Appeals for the District of Columbia Circuit—discussing the issue of new trials in the context of whether a verdict was excessive—acknowledged that traditionally, under the abuse of discretion standard, reversals of trial courts' new-trial decision were rare. 133 U.S.App.D.C. at 113, 409 F.2d at 148. The court pointed out, however, that affirmances resulted largely on review of cases in which motions for new trial were denied. *Ibid.* The court noted that in such cases, the trial court's unique opportunity to consider the evidence in the context of a "living trial" coalesces with the "deference properly given to the jury's determination of such matters of fact as the weight of the evidence," so as to favor restricted appellate review. *Ibid.* The court went on to stress, however, that when the jury has exercised its factfinding function, and the trial judge sets that body's decision aside by granting a new trial, the two factors favoring limited review are in opposition, not harmony. *Ibid.;* see 11 Wright & Miller, *supra*, § 2819 at 126–27.

The *Taylor* court's broader review of a trial court's decision was predicated upon the Third Circuit's opinion in *Lind v. Schenley Industries, Inc.*, 278 F.2d 79 (3d Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 53, 5 L.Ed.2d 60 (1960), which it followed. 133 U.S.App.D.C. at 113 n.13, 409 F.2d at 148 n.13. *See Baber v. Buckley*, D.C.App., 322 A.2d 265, 267 n.1 (1974); *Vander Zee v. Karabatsos, supra*, 191 U.S.App.D.C. at 206 & n.6, 589 F.2d at 728–29 & n.6. Under *Lind*, an appellate court distinguishes be-

tween cases in which a new trial is granted because of some legal error, and cases in which the trial judge simply has reweighed evidence already submitted to the jury. *Vander Zee, supra,* 191 U.S.App.D.C. at 206, 589 F.2d at 728; *Taylor, supra,* 133 U.S. App.D.C. at 113 n.13, 409 F.2d at 148 n.13. In the latter situation, as is true here,

> the [trial] judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial. [*Lind v. Schenley Industries, Inc., supra,* at 90.]

*Quoted with approval in Baber v. Buckley, supra,* 322 A.2d at 267 n.1. Thus, when the trial court has ordered a new trial because of the existence of legal error, "the appellate court should be more inclined to affirm the grant than when the trial court simply weigh[ed] the evidence differently than the jury . . . ." *Vander Zee, supra,* 191 U.S.App.D.C. at 206, 589 F.2d at 729.

■ Applying these principles to this case, we find no persuasive reasons in support of the trial judge's conclusion that the jury's verdict was against the weight of the evidence. As we noted earlier, the photographs, as well as the testimony by appellant and Schreiber, support the jury's finding that one of the holes in the sidewalk was the cause of appellant's fall. Indeed, there was no evidence to the contrary advanced by the District. The only aspect of the testimony which might have worked in favor of the District was the cross-examination of Schreiber, in which he conceded that earlier he had signed a statement indicating that "there were loose bricks on the sidewalk" as opposed to holes. Schreiber, however, explained the circumstances surrounding that statement, and to the extent that his explanation called his credibility into question, that credibility was a question for the jury. Moreover, a contrary view by the trial judge of Schreiber's testimony on this point would not justify granting a new trial on the ground that the verdict was against the weight of the evidence. Accordingly, that ruling also must be reversed.

■ The District, however, also moved for a new trial on the ground that the verdict was excessive, and sought a remittitur. The contentions thus advanced do not appear to be without some merit. However, ruling as it did, the trial court did not reach the questions of whether a new trial should be granted on that ground, or whether a remittitur might provide a feasible resolution of the controversy. The District is entitled to have these issues considered by the trial judge in the first instance. Therefore, we remand the case to the trial court for a determination as to whether the amount of the verdict warrants a new trial, or for consideration of a remittitur.

*Reversed and remanded for further proceedings consistent with this opinion.*