Eliza A. **FELTON**, Appellant,

v.

Daniel E. **WAGNER**, Appellee.

No. 84–359.

District of Columbia Court of Appeals.
Argued Jan. 14, 1986.
Decided July 22, 1986.

Kenneth Shepherd, with whom David Santee Miller, Washington, D.C., was on brief, for appellant.

D'Ana E. Johnson, with whom James C. Gregg, Washington, D.C., was on brief, for appellee.

Before NEWMAN and TERRY, Associate Judges, and PAIR, Senior Judge.

TERRY, Associate Judge:

This is a personal injury action involving a pedestrian and an automobile. Appellant, the pedestrian and plaintiff below, received a favorable jury verdict at the first trial, only to see it set aside and a new trial ordered on the grounds that the verdict was against the weight of the evidence and that appellee might have been prejudiced by a reference to insurance made by appellant's medical expert. A new trial was held, at which the jury returned a verdict in favor of appellee, the defendant and driver of the automobile. Appellant contends on this appeal that the first trial judge abused his discretion in granting a new trial. Alternatively, she argues that the second trial judge erred in refusing to instruct the jury on the doctrine of last clear chance. Finding no error in either ruling, we affirm the judgment.

## I

Appellant was injured while attempting to cross Connecticut Avenue in the middle

of the block between H and I Streets, N.W. Although the facts proven at the two trials were substantially the same, it will be useful for us to summarize the evidence presented at each trial separately in order to decide the issues on appeal.

### A. *Trial No. 1*

Appellant, Eliza Felton, testified that at about noon on May 9, 1980, she had just left her bank and was on her way back to work when she crossed Connecticut Avenue in the middle of the block between H and I Streets, N.W. Traffic was congested, and cars were parked in the curb lanes on both sides of the street. Appellant made her way between two parked cars on the west side of Connecticut Avenue, and walked in front of a wide-bodied bread truck that was double-parked and blocking traffic in the southbound lane.

Mrs. Felton testified that she safely passed the bread truck, reached the double yellow line, paused, looked both ways before proceeding, and took two to three steps into the northbound traffic lane. Suddenly, she saw appellee Wagner's car approach from the left as it pulled around the bread truck. The car had crossed over the double yellow line and was headed straight at her. She froze, not knowing which way to go, and was struck by the car's right front fender. Mrs. Felton said that there was room for Mr. Wagner's car to pass safely on either side of her.[1]

Mr. Wagner testified that the traffic on Connecticut Avenue between H and I Streets was extremely congested that day. He first noticed the bread truck when there were three to five cars separating the truck from his car. "From that angle," he said, "I could not see what was in front of the bread truck." While proceeding southbound, Mr. Wagner's car was in first or second gear, and was not moving faster than ten or fifteen miles an hour. He had

a "clear lane of traffic" in which his car was able to pass the bread truck without crossing the center line, and he denied having ever crossed the double yellow line at any time before his car collided with Mrs. Felton. Wagner said he did not see any pedestrians crossing the street before he proceeded around the bread truck; however, when he was just a few feet past the bread truck, he suddenly saw Mrs. Felton and realized that she was about to walk into his car. He testified that Mrs. Felton was not paying attention as she was crossing the street, and that she walked into the side of his car "at a point in contact approximately six inches to a foot in front of the front edge of my right-hand door." Mr. Wagner added that he had recently waxed his car, and that after the accident the only mark of any kind on the car was a scraping of wax at the precise point where he said contact was made, namely, where the windshield meets the right front door hinge.

Louis Blanks, the bread truck driver, testified that he saw Mrs. Felton walk in front of his truck "reading a pamphlet, or a book." He continued to watch her "all the way, and then, when she passed the truck, she kept reading, and I heard her scream and saw her hit by a car." Mr. Blanks said that the portion of the car that struck Mrs. Felton was "[c]lose to the door, the windshield." He also said that Mr. Wagner's car did not cross over the double yellow line.

Ronald Rouse, a cab driver, was driving his cab north on Connecticut Avenue. At the moment Mrs. Felton was injured, however, the cab was not moving because of the traffic congestion. Rouse testified that he noticed Mrs. Felton because "to me, she wasn't paying attention to where she was going." As he watched, "[s]he walked off the curb ... looking in the opposite direction, like she was waving at someone,[2] and she walked directly into the side of

---

1. A physician and an economist also testified on the issue of damages.

2. When asked whether he saw Mrs. Felton "look to her left or right for oncoming traffic," Mr.

Rouse answered, "No, she just continued walking. And, like I said, she just wasn't paying attention. That's all there is to it."

[Mr. Wagner's] car." To Mr. Rouse it appeared that she collided with the "rear of the front fender, or the side of his door." Mr. Rouse opined that Mr. Wagner could not have been going more than two to three miles per hour, because "[t]here was traffic in front of him and it was very congested in that area." Moreover, Mr. Rouse "did not see [Wagner's] car cross over any lane." [3]

The jury returned a verdict in favor of Mrs. Felton. Four and a half months later, however, the trial judge granted Mr. Wagner's motion for a new trial on the ground that the jury's verdict was contrary to the clear weight of the evidence. [4] In his order, the judge said:

> [B]oth of the disinterested eyewitnesses who testified at the trial [Blanks and Rouse] corroborated the defendant's testimony concerning the sequence of events leading up to the accident. This testimony was to the effect that the plaintiff, crossing Connecticut Avenue in the middle of the block, walked into the side of the defendant's vehicle an instant after walking from in front of an idling bread truck. In the Court's opinion the weight of this evidence coupled with the prejudice which the defendant may have suffered as a result of Dr. Azer's gratuitous comment concerning his policy of not testifying for insurers [5] requires the granting of a new trial to prevent a miscarriage of justice. [6]

## B. *Trial No. 2*

At the second trial, Mrs. Felton's testimony was essentially the same as it had been at the first trial. In particular, she stated:

> When I got to the double yellow lines, I looked southward towards the White House and there was no traffic coming ... and then I looked to my left, towards I Street ... and I didn't see anything.... So, I stepped out a couple of steps, and as I stepped out, out [of] the corner of my eye I glimpsed this small car or object coming from around that truck. And then I just froze. I didn't know what to do. The next thing I knew, I was hit.

Morris Manley testified on behalf of Mrs. Felton as an eyewitness. He said he was standing three doors down from the bank at the corner of Connecticut Avenue and H Street when Mrs. Felton was struck. Manley said he recognized appellant as she crossed the street because he had previously "seen her come to a neighbor's house that lived downstairs." He saw her as she stepped past the bread truck, "and then all of [a] sudden" he saw Mr. Wagner's car pull up. Wagner appeared to be a little angry, he said, "because the traffic wasn't moving." Then suddenly Mrs. Felton was hit by the car. According to Mr. Manley, the car was at an angle when it hit her, and its rear end "was sticking out into the

---

3. Mr. Wagner also called his own medical expert to refute Mrs. Felton's evidence of damages.

4. An alternative motion for judgment n.o.v. was denied.

5. The "gratuitous comment" by Dr. Azer, Mrs. Felton's medical expert, was made in answer to a question asked by counsel for Mr. Wagner about whether the doctor usually testified on behalf of plaintiffs or defendants. Dr. Azer responded, "I appear for our patients, and they can be either.... What we do not do is just simple evaluations for insurance companies." Wagner's counsel objected and moved for a mistrial, which was denied. The trial court offered to give a curative instruction, but Wagner's counsel declined the offer.

6. The judge added the following footnote:

> The Court has been informed by its clerk that the defendant propped his feet on the table at which he was sitting during a bench conference. This contemptuous conduct was perhaps a factor in the jury's verdict.

Appellant now argues that the trial judge erred in considering Mr. Wagner's misconduct as a basis for granting a new trial. It is clear from the judge's order, however, that this incident did not play any role in his decision to grant a new trial; rather, the judge simply took occasion to comment on Mr. Wagner's courtroom demeanor, no doubt hoping that he would not be so ill-mannered at a future trial.

other side of the street" over the double yellow line.

Mr. Wagner testified on his own behalf, repeating most of his testimony from the first trial. He stated that as he pulled past the bread truck, Mrs. Felton "walked into the side of my car impacting at the approximate point where the front meets the windshield...." He again denied having crossed the double yellow line, except possibly after the impact "because of the reaction to turn away from where she impacted on my car." He also said that he was driving in first gear because of the traffic congestion and could not have been traveling more than ten or fifteen miles per hour.

Judge Revercomb, who presided over the second trial, declined to instruct the jury on the doctrine of last clear chance, despite the fact that Judge Kennedy had done so in the first trial. Judge Revercomb concluded that this was not a last clear chance case because no evidence had been presented to show that Mr. Wagner knew or should have known of Mrs. Felton's peril. The case went to the jury, which returned a verdict in favor of Mr. Wagner. From the judgment on that verdict, Mrs. Felton brings this appeal.

## II

Appellant contends that Judge Kennedy, the first trial judge, abused his discretion by ordering a new trial on the ground that the verdict was against the clear weight of the evidence. We disagree.

■ A ruling on a motion for new trial is committed to the sound discretion of the trial court, and our scope of review is limited to whether there has been an abuse of that discretion. *Oxendine v. Merrell Dow Pharmaceuticals, Inc.*, 506 A.2d 1100, 1110 (D.C.1986); *Rich v. District of Columbia*, 410 A.2d 528, 535 (D.C.1979). When the trial court has denied the motion, thereby sustaining the jury's verdict, our scope of review is very narrow indeed. *Ox-*

*endine, supra,* 506 A.2d at 1111; *Rich, supra,* 410 A.2d at 535; *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C. 110, 113, 409 F.2d 145, 148, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). But when, as in this case, the trial court grants the motion after determining that the verdict is against the weight of the evidence, we will closely scrutinize the record to ensure that the trial judge did not simply prefer one version of the facts over another, *see Oxendine, supra,* 506 A.2d at 1111; *Rich, supra,* 410 A.2d at 535–536, and "to protect the litigant's right to jury trial." *Lind v. Schenley Industries, Inc.,* 278 F.2d 79, 90 (3d Cir.) (en banc), *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960).

■ In contrast to a motion for judgment notwithstanding the verdict, which requires the court to consider the evidence in the light most favorable to the non-moving party, a motion for new trial requires consideration of all the evidence, both favorable and unfavorable. *Rich, supra,* 410 A.2d at 534–535. Judge Kennedy presumably recognized this distinction when he granted a new trial while simultaneously denying Mr. Wagner's motion for judgment n.o.v. Arguably, at least, the jury had some evidence on which to find in Mrs. Felton's favor, thus justifying the denial of the motion for judgment n.o.v.[7]

■ Looking at all the evidence, we cannot say that Judge Kennedy abused his discretion in granting a new trial. As the judge noted, the two disinterested witnesses corroborated the most important aspects of Mr. Wagner's testimony: first, that Mrs. Felton walked into the side of his car, and second, that Mr. Wagner's car did not cross the double yellow line. Furthermore, there was no evidence that Mr. Wagner was speeding or driving recklessly. All of the witnesses, including Mrs. Felton, testified that the traffic was very congested; Wagner said that his car was in first or second gear, and that he was moving no faster

---

7. Whether judgment n.o.v. was properly denied in the first trial is, of course, not before us on this appeal, and we express no opinion on the issue either way.

than ten to fifteen miles per hour, and the cab driver stated that Wagner was moving at a mere two to three miles per hour. Finally, that Mrs. Felton was herself negligent is supported not only by the testimony of Mr. Wagner and the two disinterested eyewitnesses, but also by her own testimony that she crossed the street at mid-block, despite the existence of a cross walk at the nearest corner. Thus we cannot say, as we did in *Oxendine, supra,* that the evidence "on both sides ... was fairly evenly weighted," 506 A.2d at 1113, and we are not persuaded that Judge Kennedy abused his broad discretion in granting a new trial.[8]

### III

Thus we turn to Mrs. Felton's other argument that Judge Revercomb erred in the second trial when he refused to instruct the jury on the doctrine of last clear chance. The jury in the first trial was given a last clear chance instruction, and because the evidence in the second trial was approximately the same as that in the first, she maintains that the jury should have been similarly instructed. Of course, whether the instruction was properly given in the first trial is not at issue on this appeal, and we express no opinion on that question. We hold, however, that Judge Revercomb's refusal to give a last clear chance instruction was appropriate in light of the evidence at the second trial.

▪ The doctrine of last clear chance is of utmost importance to a plaintiff in a case, such as this one, in which there is substantial evidence of contributory negligence on her part. In the District of Columbia contributory negligence is an absolute bar to recovery in a negligence action.

*E.g., Elam v. Ethical Prescription Pharmacy, Inc.,* 422 A.2d 1288, 1289 n. 2 (D.C. 1980); *Brown v. Clancy,* 43 A.2d 296, 298 (D.C.1945).[9] But under the last clear chance doctrine, a plaintiff such as Mrs. Felton is permitted to recover, despite her own contributory negligence, if there is evidence (1) that the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) that the plaintiff was oblivious to the danger, or unable to extricate herself from the position of danger; (3) that the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of her oblivion to it or her inability to extricate herself from it; and (4) that the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate herself from it, but failed to do so. *Byrd v. Hawkins,* 404 A.2d 941, 942 (D.C.1979); *Mathews v. Lindsay,* 108 U.S. App.D.C. 292, 293, 281 F.2d 927, 928 (1960). "It is not the right of every injured party who has been contributorily negligent to seek the aid of the doctrine of last clear chance...." *Phillips v. D.C. Transit System, Inc.,* 198 A.2d 740, 742 (D.C.1964). The burden is on the plaintiff to present evidence on all four elements before a last clear chance instruction may be given; furthermore, the doctrine is "not applicable if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously." *Id.*

▪ Looking at appellant's testimony in the light most favorable to her, we conclude that she proved only the first two

---

**8.** Any doubts about Judge Kennedy's decision should be dispelled by the fact that it was based not only on his view that the verdict was contrary to the weight of the evidence, but also on the possibility that Mr. Wagner might have been prejudiced by the reference to insurance companies made by Mrs. Felton's medical expert. *See Eichel v. New York Central R.R.,* 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) ("It has long been recognized that evidence showing

that the defendant is insured creates a substantial likelihood of misuse"); E. CLEARY, McCORMICK ON EVIDENCE § 201 (3d ed. 1984).

**9.** The courts of the District of Columbia have not yet adopted the doctrine of comparative negligence. *See D.C. Transit System, Inc. v. Garman,* 112 U.S.App.D.C. 244, 246, 301 F.2d 568, 570 (1962).

elements of the four that are required for a last clear chance instruction. Mrs. Felton was placed in a position of danger caused by her own negligence in crossing the street at mid-block, as well as by Mr. Wagner's negligence [10] in crossing over the double yellow line. Thus the first element was established. The second element was also proven by Mrs. Felton's testimony that when she first started crossing the street, she did not see Mr. Wagner's car coming, but when she looked to her left a second time and did see his car, she froze in place. Thus she was at first unaware of her position of danger and then unable to extricate herself from it.

Appellant presented no proof, however, on the two remaining elements. With respect to the third element, there was no evidence that Mr. Wagner actually saw Mrs. Felton or that he was aware of her perilous situation in time to avoid the accident. In addition, Mr. Wagner was at most a few car lengths from Mrs. Felton before she stepped out into the street; in fact, the only thing apparently separating the two of them was the bread truck. When Mr. Wagner pulled around the bread truck, allegedly crossing over the double yellow line, Mrs. Felton was already halfway across the street. On this evidence no reasonable trier of fact could find that Mr. Wagner, with the exercise of due care, would or should have been aware of Mrs. Felton's peril in time to avoid striking her. *See Phillips v. D.C. Transit System, Inc., supra,* 198 A.2d at 742 (last clear chance doctrine not applicable when there was "no competent testimony to establish that the bus driver was aware of the perilous situation of appellant or that, had he been aware thereof, there was time in which he could have avoided the collision").

Finally, because there was no testimony placing Mr. Wagner's car at a great enough distance from Mrs. Felton so that he could have avoided striking her, the fourth element was not established. It would not have sufficed for Mr. Wagner to honk his horn, even if he had had time to do so, because Mrs. Felton testified that she froze in place as soon as she saw the car coming at her. Moreover, because she was struck immediately thereafter, there would not have been sufficient time for Mr. Wagner to swerve out of the way. Mr. Wagner simply had no chance to avoid hitting Mrs. Felton after he became aware, or should have become aware, of her predicament.

For these reasons we hold that Mrs. Felton failed to present sufficient evidence to justify a last clear chance instruction. The judgment in favor of Mr. Wagner is accordingly

*Affirmed.*

PAIR, Senior Judge, dissenting:

In applying the standard of review for trial court orders granting new trials, this court must determine if the decisionmaker failed to consider a relevant factor, "whether he relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Pyne v. Jamaica Nutrition Holdings, Ltd.,* 497 A.2d 118, 126 (D.C.1985) (citing *Johnson v. United States,* 398 A.2d 354, 365 (D.C.1979)). My review of the record to this end compels in my opinion a conclusion that the trial court abused its discretion when it granted a new trial.

The majority asserts that "two disinterested witnesses corroborated the most important aspects of Mr. Wagner's testimony: first, that Mrs. Felton walked into the side of his car; and second, that Mr. Wagner's car did not cross the double yellow line." The majority, however, overlooks many of the discrepancies in the testimony: which lane Wagner was in, his speed, where on the car the point of impact occurred, what happened when Felton was hit, what she was doing, and where she was looking at the time of the accident.

10. We are not saying that Mr. Wagner was in fact negligent, but only that Mrs. Felton's evidence, if believed, would support a finding of negligence on his part.

In contrast to Wagner's testimony, Felton testified that Connecticut Avenue between H and I Streets consisted of four lanes—two parking and two traffic. She testified also that she was crossing Connecticut Avenue, west to east, by negotiating between parked cars and in front of the stopped bread truck, and crossed the double lines dividing northbound from southbound traffic. At the center line, she stopped, looked both ways, and proceeded forward only to freeze when she caught from the corner of her eye a car. The car had come from behind the truck in the southbound lane and was crossing the double lines into the northbound lane. Felton was struck by Wagner's vehicle, flew into the air, and fell onto the front of his car and, finally, onto the ground. From her estimation, Felton, concededly inexperienced at estimating distances, claimed that there was insufficient room for a car to pass the bread truck without going into the northbound lane.

The bread truck driver, Blanks, offered his version of the incident. He was stopped at a light in the southbound lane on Connecticut Avenue with no cars to his left. According to him, there was room for a car to pass on the left. He observed Felton, reading a book or a pamphlet, walk out of a building, pass in front of his truck and be struck by a car. Felton, Blanks testified, hit the car close to the door and windshield and spun forward. Blanks indicated a dent on the side of the car at the point of impact.

On cross-examination, however, Blanks' deposition testimony, in which he said that Felton was thrown forward, was read. Blanks' earlier testimony also suggested that Wagner was in the northbound lane. Despite his answer in the negative to a query concerning whether he had ever demanded money for his testimony, Wagner's attorney stipulated to the jury that after appearing twice for trial and not being called, Blanks had demanded a $300 witness fee for his testimony. The attorney further stipulated that unless paid, Blanks threatened to contact Felton's attorney and request a second deposition.

A second eyewitness, a cab driver, was in the northbound lane at the time of the accident. He also testified he observed Felton walking across Connecticut Avenue. Unlike Blanks, who testified he saw Felton reading, Rouse testified he saw Felton waving to someone behind her so that she wasn't facing the direction she was walking and not paying attention, and walked directly into the side of the car. Wagner, Rouse testified, was going not ten to fifteen miles per hour, but two to three miles per hour and was in the southbound lane.

Evidence in this trial was therefore conflicting and interested. It is the office of the jury, not the judge, to make judgments concerning evidence. *See, e.g., Acqui v. Isaac*, 342 A.2d 370 (D.C.1975). Sufficient evidence was presented in this case to support a jury verdict for the plaintiff. The jury, not unreasonably, chose to give credence to the plaintiff's account and to reject the contradicting testimony of the defendant—an interested witness, of Blanks—an impeached and potentially interested witness, and Rouse—an eyewitness. I would conclude, after a scrutiny of the evidence, that the trial court abused its discretion when it granted defendant's motion for a new trial on the basis on the verdict being against the clear weight of the evidence.

While the thrust of the trial court's opinion concerned weight of the evidence, it also relied on the potential prejudice caused by a reference to insurance to support its grant of a new trial. The majority bolsters its argument for affirmance by asserting the latter ground is dispositive, if not the former. *See* majority opinion, *supra* n. 8. Despite the majority's assertion to the contrary, this ground is equally inadequate.[1]

---

1. Nor can I agree that the trial court's comment on the defendant's demeanor was not relied on by the court. *See* majority opinion, *supra,* n. 6.

Believing it was a factor, I would deem it a basis too speculative to serve as a legitimate basis for

In addressing this issue, this court has stated:

> We think it may be fairly assumed that the average juror in an automobile negligence case suspects that the defendant has liability insurance and that the case is being defended by the insurance company. At any rate, we feel that the time has come when the mere mention of insurance in a negligence case ought not ipso facto require a mistrial.

See *Parks v. Ratcliff,* 240 A.2d 659, 661 (D.C.1968).

An innocuous allusion to insurance which may have influenced the jury is therefore a ground too speculative to warrant a new trial. *See Baber v. Buckley,* 322 A.2d 265, 267 (D.C.1974). Furthermore, a motion for mistrial—the appropriate remedy for prejudicial remarks—had already been properly denied in this case and curative instructions declined by defense counsel. Because improper factors were relied on and the reasons given do not support the conclusion, I would find an abuse of discretion and reverse.