Albert WESTBROOK, Appellant,

v.

WASHINGTON GAS & LIGHT
COMPANY, Appellee.

No. 97–CV–1122.

District of Columbia Court of Appeals.

Argued March 8, 2000.
Decided April 13, 2000.

Kenneth M. Robinson, with whom Randall W. Roy, Washington, DC, was on the brief, for appellant.

Beverly J. Burke, with whom L. Patrice Latimer, Washington, DC, was on the brief, for appellee.

Before SCHWELB and REID, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

After a jury trial, this case resulted in a verdict in favor of appellee Washington Gas & Light Company ("Washington Gas") due to a finding that appellant Albert Westbrook voluntarily assumed a known risk that was the proximate cause of his injury. During trial, Mr. Westbrook requested an instruction on the last clear chance doctrine. The trial court declined to give the instruction. On appeal, Mr. Westbrook contends that the trial court erred by refusing to give the requested instruction. We conclude that Mr. Westbrook was not entitled to a last clear

chance instruction, and affirm the trial court's judgment.

## FACTUAL SUMMARY

Testimony presented at trial showed that on February 13, 1994, customers dining at the Chef's Table restaurant told Mr. Westbrook, the proprietor of the restaurant, that they smelled gas. Investigation revealed a gas leak in the sidewalk area in front of the restaurant. Washington Gas was notified and within several minutes personnel from both Washington Gas and the District of Columbia Fire Department ("the Fire Department") arrived on the scene. Everyone was evacuated from the restaurant, and Mr. Westbrook locked the doors.

Minutes after the evacuation, John Reginald Hammond II, a Washington Gas employee, asked Mr. Westbrook to return to the restaurant with him and "show [him] some of the meters." Mr. Westbrook took Mr. Hammond inside the restaurant, showed him the room where the meters were, and walked back toward the entrance of the restaurant. Mr. Hammond soon emerged from the room, moving at a rapid pace. He suggested that Mr. Westbrook leave the restaurant "quickly." Mr. Westbrook left and again locked the door.

According to Mr. Westbrook's trial testimony, shortly after his second exit from the restaurant, a "fireman tapped [him] on the shoulder" and "told [him] the gas man wanted [him] to go back in again." Another fireman "le[ ]d [Mr. Westbrook] to the [restaurant] where [Mr. Hammond] was ... [waiting]." Mr. Westbrook "offered [Mr. Hammond] the keys." Mr. Hammond "said he would not accept them, that [Mr. Westbrook] had to show him the meters." Mr. Westbrook maintained that Mr. Hammond threatened him with arrest if he did not comply. So, he unlocked the restaurant door and reentered with Mr. Hammond and a fireman. The fireman asked where the e 'tric room was, and Mr. Hammond stated that he needed to turn the gas off. While Mr. Hammond and the fireman went about their tasks, Mr. Westbrook "just walked around the kitchen realizing that [he] wanted to get out of there." He said he "was very afraid." He decided to ask the fireman if he could leave. On cross examination, counsel for the District of Columbia asked Mr. Westbrook: "Now this fire official who went into the building with you, he never instructed you that you had to remain in the building, did he?" Mr. Westbrook answered: "No."

On his way to seek permission from the fireman to leave, Mr. Westbrook walked toward the cocktail lounge and stopped to put out a burning candle. Then he proceeded toward the electric room in search of the fireman. As he approached the electric room door, he called out to the fireman three times and then opened the door.[1] An explosion took place, and he "was thrown all over the room, hit several

---

1. In response to a question from Washington Gas, designed to impeach his credibility as to whether his purpose for reentry into the restaurant was to determine if the back door was locked, Mr. Westbrook stated:

 After showing Mr. Hammond the meters, I w[a]ndered around the kitchen, saw the walk-in box open, at the same time saw the back door was locked, [and] decided to go to the fireman through the cocktail lounge.

 During his deposition, which was taken approximately one year prior to trial in his case, Mr. Westbrook had said:

 When the fireman walked right to the electric room, I walked to the back door to see if it was locked. There was a walk-in box, an open door sitting partially open and I

 shut that and walked into the hallway. I walked in the hallway towards the cocktail lounge towards the electric room. There was a candle light about two tables up. I walked over and blew it out. I walked to the electric room and said Mr. Fireman, Mr. Fireman.

 After reading this passage to Mr. Westbrook at trial, counsel for Washington Gas asked whether he "recall[ed] making these statements?" He replied: "I recall making those statements." On redirect examination, Mr. Westbrook asserted that the foregoing passage contained a mistake and that he really was talking about Mr. Hammond and the meter room in the first sentence.

things, [and] wound up on the floor." Despite the pain, smoke and his "sizzling skin," Mr. Westbrook managed to get out of the restaurant, and others soon came to his aid.

Other testimony provided a different account of the second reentry into the restaurant, or supported, at least in part, Mr. Westbrook's account. Mr. Hammond testified that when he first went into the restaurant, he did not have the proper tools with which to turn off the gas. After getting his tools, he found the restaurant door locked and told the Fire Department that he needed to get into the restaurant. He stated that he never asked Mr. Westbrook to reenter, and in fact informed Mr. Westbrook "that it was unsafe, that he was not allowed to go in there, that he was not allowed to stay in there." Mr. Hammond said that he was outside the restaurant when he heard the explosion and eventually witnessed Mr. Westbrook coming out of the restaurant. When he asked Mr. Westbrook what happened, Mr. Westbrook "said he hit an electric switch." On cross-examination, Mr. Hammond gave an explanation regarding a written statement he had given after the incident which seemed to suggest that Mr. Westbrook had entered the restaurant with him.

Steven Smith, the fireman, testified that he spoke with Mr. Westbrook while they were awaiting an ambulance. According to his testimony, Mr. Westbrook stated that "as he was leaving the building, he cut the lights off." He also asserted that prior to the second reentry, Mr. Hammond and Mr. Westbrook engaged in a "heated argument" and that "both of them walked into the building together." James Bielaski, a Washington Gas safety specialist, testified that during his post-incident conversation with Mr. Hammond, Mr. Hammond declared that: "[H]e was very surprised to see Mr. Westbrook when he came out of the meter room standing in the kitchen"; and "[Mr. Hammond] saw [Mr. Westbrook] in the kitchen after he had turned the meters off."

After all of the testimony had been presented and closing and rebuttal arguments were made, the jury was instructed by the trial judge and began deliberating. The jury verdict form posed questions as to whether Washington Gas and the Fire Department were negligent, and whether Mr. Westbrook was contributorily negligent and assumed the risk. During its deliberations, the jury sent a note to the trial judge asking whether it had to determine both the contributory negligence and the assumption of risk issues. The trial judge instructed the jury that if it made a determination as to either contributory negligence or assumption of risk, it did not have to resolve the other. Subsequently, the jury found Washington Gas negligent, but not the Fire Department. In addition, the jury did not respond to the contributory negligence question, but declared that Mr. Westbrook had voluntarily assumed a known risk that was the proximate cause of his injury.

## ANALYSIS

Mr. Westbrook's sole argument on appeal is that: "The trial court committed reversible error by refusing [his] request for the last clear chance doctrine." Washington Gas argues that the trial court's denial of the request was proper because: (1) Mr. Westbrook failed to satisfy all the elements of the last clear chance doctrine, and (2) the last clear chance doctrine applies only to contributory negligence and the jury did not find Mr. Westbrook contributorily negligent.

 "Generally a party is entitled to a jury instruction upon the theory of the case if there is sufficient evidence to support it." *George Washington Univ. v. Waas,* 648 A.2d 178, 183 (D.C.1994) (citing *Wingfield v. Peoples Drug Store, Inc.,* 379 A.2d 685, 688 (D.C.1977) (other citations omitted)). "[I]n determining whether a proposed instruction on a party's theory of the case was properly denied, we review the record in the light most favorable to

that party." *Nelson v. McCreary,* 694 A.2d 897, 901 (D.C.1997) (citing *Wilson v. United States,* 673 A.2d 670, 673 (D.C. 1996)).

■ With respect to the last clear chance doctrine, we said in *Felton v. Wagner,* 512 A.2d 291 (D.C.1986):

> [U]nder the last clear chance doctrine, a plaintiff ... is permitted to recover, despite [his] own contributory negligence, if there is evidence (1) that the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) that the plaintiff was oblivious to the danger, or unable to extricate [himself] from the position of danger; (3) that the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of [his] oblivion to it or [his] inability to extricate [himself] from it; and (4) that the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate [himself] from it, but failed to do so.

*Id.* at 296 (citing *Byrd v. Hawkins,* 404 A.2d 941, 942 (D.C.1979) (other citation omitted)). In addition, we emphasized that: "The burden is on the plaintiff to present evidence on all four elements before a last clear chance instruction may be given ...." *Id.* See also *Robinson v. District of Columbia,* 580 A.2d 1255, 1258–59 (D.C.1990) (modifying the fourth element of the last clear chance doctrine to "make clear that it pertains to a defendant who, with means available to him, could have avoided injuring the plaintiff after he became aware of, or reasonably should have become aware of, the danger and the plaintiff's inability to extricate himself from it"); RESTATEMENT (SECOND) OF TORTS § 479 (1965) regarding the "helpless plaintiff" and § 480 concerning the "inattentive plaintiff."

■ Traditionally, the doctrine of last clear chance has been applied only to defeat contributory negligence. *See District of Columbia v.. Huysman,* 650 A.2d 1323, 1326 (D.C.1994) (citing *Felton, supra,* 512 A.2d at 296). Indeed, the definition of last clear chance presupposes that the jury has found contributory negligence. Moreover, in *WMATA v. Johnson,* 726 A.2d 172 (D.C. 1999) (en banc), we held under the peculiar circumstances presented there, that the doctrine was not available to defeat assumption of risk. Specifically, we concluded that the last clear chance doctrine does not apply to a plaintiff who "intended the very harm that befell [him or] her" or "purposefully invited the harm that resulted" or "voluntarily ... invited the particular harm that occurred." *Id.* at 174–75. *Johnson* however did not hold, as Washington Gas argues here, that the last clear chance doctrine does not apply to assumption of risk; that issue was not before the court. Nor do we decide here whether the doctrine does or does not apply in hypothetical circumstances different from those presented in *Johnson.* We do conclude that, even if we were to assume for the sake of argument that the doctrine may apply where the plaintiff has assumed the risk, the record in this case does not support a last clear chance instruction.

The record on appeal shows that counsel for Mr. Westbrook requested the last clear chance doctrine, saying:

> We feel there's sufficient factual information in here for last clear chance that Hammond, if the jury believes Hammond saw Westbrook in the kitchen, he had a duty to try to get him out of there, last clear chance to avoid a problem. As well as if Smith saw a heated argument and later apologized for whatever happened, the fire department was on notice they should have stopped him from going in. That's the last clear chance instruction.

> It's the only cure to a contributory negligence death. I mean, if the last clear chance by Hammond, for example, was to take Westbrook out of the kitchen, which I think we pretty clearly es-

tablished through Bielaski, even if Westbrook stayed behind, having left him there, flip the switch, then the jury could resolve it's still in Westbrook's favor as the last clear chance. He should have been taken out and he never would have had an opportunity to flip the switch.

Counsel for Washington Gas insisted that this was not a last clear chance case. The trial judge agreed and refused to give the instruction saying: "I don't think it applies in this circumstance." Nonetheless, prior to reaching this conclusion the trial judge also stated:

[L]et's assume for the moment the jury finds Mr. Westbrook unlocked the door for Mr. Hammond, Mr. Hammond went in. Mr. Westbrook snuck in behind him and was in the kitchen when Mr. Hammond came out of the meter room and Hammond hightailed it to the door and left.

If the jury finds that as a fact, it would be finding that they were negligent, somebody was negligent in allowing Mr. Westbrook to get back in. He was contributorily negligent to go back in or assumed the risk—well, forget assumption of the risk for a moment. He was contributorily negligent to go back in and Hammond had the last clear chance to prevent this injury by physically getting him out before Hammond got out.

Furthermore, in instructing the jury on assumption of risk, the trial court informed the jury that it would have to find two things by a preponderance of the evidence. First, "[Mr. Westbrook] knew of the existence of a dangerous condition." Second, "[Mr. Westbrook] voluntarily exposed himself to the danger." *See Scoggins v. Jude,* 419 A.2d 999, 1004 (D.C.1980) ("Assumption of risk is an available defense when a plaintiff voluntarily has incurred a known risk.") (citations omitted).

We conclude that, on the facts of this case, the trial court did not err in refusing to give a last clear chance instruction. At least with respect to the second element of the last clear chance doctrine—"that the plaintiff was oblivious to the danger, or unable to extricate [himself] from the position of danger," *Felton, supra,* 512 A.2d at 296 (citing *Byrd, supra,* 404 A.2d at 942 (other citation omitted))—Mr. Westbrook failed to present evidence that would have entitled him to a last clear chance instruction. Mr. Westbrook's own trial testimony confirmed that, during his first reentry into the restaurant, he had been told of the danger of remaining inside the restaurant. Upon his second reentry into the restaurant, he also knew the danger and was not inattentive or oblivious to it as evidenced by his statement during his testimony: "I was very afraid." We see no evidence presented at trial that Mr. Westbrook was unable to extricate himself from danger the second time he reentered the restaurant. After he let the fireman and Mr. Hammond into the restaurant and showed the fireman the location of the electric room, Mr. Westbrook stated that he "just walked around the kitchen."

Even when the evidence is viewed in the light most favorable to Mr. Westbrook, there is no evidence that he was physically unable to leave the restaurant, or that he was immobilized by his fear. In fact, upon leaving the kitchen and walking toward the cocktail lounge, he stopped at the lounge to extinguish a burning candle before proceeding to the electric room to ask the fireman if he could leave the premises. *See Pack v. Doe,* 236 Va. 323, 374 S.E.2d 22, 25 (1988) (" '[I]t is only in those rare instances where the plaintiff is physically incapacitated that we have a helpless plaintiff within the meaning of the last clear chance doctrine.' ") (quoting *Vanlandingham v. Vanlandingham,* 212 Va. 856, 188 S.E.2d 96, 98 (1972) (internal quotations omitted)). Furthermore, there was no testimony that someone instructed him to remain inside the restaurant after he unlocked the door to permit entry by the fireman and Mr. Hammond. In fact, during cross-examination, Mr. Westbrook acknowledged that the fireman "never in-

structed [him] that [he] had to remain in the building." Nor did Mr. Westbrook testify that Mr. Hammond directed him to remain inside the restaurant until he had permission to leave, or that he believed Mr. Hammond had ordered him to remain inside the restaurant. Given the lack of evidence on the second element of the last clear chance doctrine, Mr. Westbrook did not satisfy his burden to show that all four elements of the doctrine were met. *See Felton, supra,* 512 A.2d at 296; *Byrd, supra,* 404 A.2d at 942.

No doubt recognizing the difficulty of qualifying for a last clear chance instruction in the face of Washington Gas's assumption of the risk defense and his plea to the jury at trial not to make a finding of contributory negligence, Mr. Westbrook argues, in his reply brief, that this court should fashion a new last clear chance doctrine in assumption of the risk cases. He asserts that such "a standard would have to focus on which negligent act, the plaintiff's or the defendant's, was the last link in the chain of negligence leading to plaintiff's injuries." However, he directs our attention to no case in which the last clear chance doctrine has been modified in an assumption of the risk case. Nor does he cite any case in which the last clear chance doctrine has resulted in a verdict for the plaintiff where the plaintiff has voluntarily assumed a known risk. *See Shuman v. Mashburn,* 137 Ga.App. 231, 223 S.E.2d 268, 272 (1976) (" 'A person who voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having assumed such dangerous position he is injured, cannot recover against another who is also negligent.' ") (quoting *Taylor v. Morgan,* 54 Ga.App. 426, 188 S.E. 44 (1936)). Consequently, in this case, we see no reason to carve out a new last clear chance doctrine in cases where the defendant relies on an assumption of the risk defense.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*