James COSBY, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–554.

District of Columbia Court of Appeals.

Argued Sept. 29, 1992.
Decided Oct. 20, 1992.

---

M. Azhar Khan, appointed by the court, for appellant.

Mary–Patrice Brown, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Robert Okun, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, STEADMAN and FARRELL, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of possession with intent to distribute cocaine and possession with intent to distribute heroin, D.C. Code § 33–541(a)(1) (1988). Appellant challenges his convictions on the grounds that the trial court erred (1) in denying appellant's motion for judgment of acquittal; (2) in refusing to give Instruction 4.36 (Narcotics Addiction Not a Crime), CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (3d ed. 1978); and (3) in ordering resumption of jury deliberations after giving an "acquittal first" instruction in response to a note from the jury that indicated, without any mention of the distribution charges, that it had reached guilty verdicts on the lesser included offenses of possession of cocaine and of heroin. We affirm.

## I.

We consider, first, the evidence. On November 21, 1990, at approximately 3:45 in the afternoon in the 600 block of Park Road, N.W., near Morton Street, Officer Anthony Scarpine watched appellant, whom he later identified at trial, standing on the steps of an apartment building at 620 Park Road. Officer Scarpine knew the location as an area where narcotics are bought and sold. The officer watched as

an individual approached appellant and gave him some money. Appellant first looked around as if to see whether anyone was watching before walking down the stairs and over to a dirt area beside another nearby building. At the dirt area, appellant picked up a paper bag, removed a dark-colored pouch from the bag, and removed a white object from the pouch. He gave the white object to the individual who had given him money, again looking around to see if anyone was observing his actions. Replacing the pouch in the paper bag, he brought the paper bag and its contents back to the dirt area. Appellant then returned to the steps.

Officer Scarpine and his partner continued to watch appellant, who was approached on the steps by a second person who handed him money. Again, appellant looked around for observers as he accepted the money. Again, appellant descended the steps and walked to the dirt area, picked up the paper bag, removed the pouch, removed a white object from the pouch, and handed it to the person who had given him the money. Again, he returned the pouch to the paper bag, replaced the paper bag in the dirt area, and returned to his post on the steps.

The officers approached appellant as he walked back toward the steps the second time. As the officers got closer, they saw appellant hand money to another individual who was standing at the top of the steps. That person took the money and walked inside the apartment building.

■ The two officers apprehended appellant, and Officer Scarpine recovered the paper bag from the dirt area nearby. Inside the bag he found a dark pouch containing three clear ziplock bags and two blue ziplock bags. All five ziplocks contained white powder.[1] The officers searched appellant, who was carrying $42 in cash.

■ At trial, the jury heard Officer Scarpine's and Officer Farish's testimony. In addition, Sergeant Gerald G. Neill testified as an expert witness on the use and sale of illegal drugs in the District of Columbia, as well as on police procedures for handling drug evidence. He testified that use of the paper bag containing controlled substances reflected the routine practice among drug sellers of maintaining a "stash" of drugs with the intent to sell from the stash.

Appellant acknowledged that the recovered drugs were his, although he claimed that he had bought rather than sold the drugs in the pouch, and that the drugs were for his personal use to support his admitted drug addiction. The evidence showed that appellant tested positive for both cocaine and heroin on the day of his arrest. Appellant's wife testified that her husband had a "heroin problem," that she had given him money for drugs, and that he sometimes shared drugs with her.

The trial court should grant a motion for judgment of acquittal only if " 'there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt.' " *Curry v. United States,* 520 A.2d 255, 262 (D.C.1987) (quoting *Curley v. United States,* 81 U.S.App. D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 1512, 91 L.Ed. 1850 (1947)). After reviewing the evidence "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact," *id.* at 263, we conclude that the evidence was sufficient for conviction of distributing the illegal drugs.

---

1. The substance in the clear ziplocks tested positive for heroin; the substance in the blue ziplocks tested positive for cocaine. The tests were conducted at the Fourth District by Officer Farish. Although appellant did not object to introduction of the drugs in evidence, he now argues that the government failed to establish the chain of custody. His argument fails. Officer Scarpine handed the drugs to Officer Fiorito, who gave them to Officer Farish for testing. After testing, Officer Farish returned the drugs to Officer Fiorito, who returned them to Officer Scarpine, who placed them in a heat-sealed envelope and dropped them in the evidence "lockbox." Officer Farish testified that he had seen Officer Fiorito take the evidence from Officer Scarpine and had seen Fiorito return the drugs to Officer Scarpine after Officer Farish had performed the tests. Despite the lack of testimony from Officer Fiorito, the chain of custody was complete.

## II.

The trial court refused to give the instruction that "[i]t is not a crime to be a narcotics addict, nor is the use of narcotics, standing alone, a crime." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 4.36 (3d ed. 1978). In requesting that instruction, defense counsel had referred to the evidence that appellant is a drug addict and that the illegal drugs were for his personal use. Appellant contends that the trial court erred in refusing the requested instruction because a defendant is entitled to a jury instruction on the defense theory of the case if any evidence, however weak, fairly supports that theory.[2]

█ The trial court may properly decline to give a requested instruction in the absence of a factual or legal basis for it. *See Goddard v. United States*, 557 A.2d 1315, 1316–17 (D.C.1989); *Taylor v. United States*, 380 A.2d 989, 994–95 (D.C.1977). Addiction is not a defense to possession of a controlled substance. *See Gorham v. United States*, 339 A.2d 401, 414 (D.C. 1975) (en banc). The "Addiction is not a Crime" instruction (or some variant thereof),[3] however, is appropriately given when a defendant denies he possessed the drugs in question but there is evidence of the defendant's drug addiction. In such a case, this instruction cautions the jury against convicting the defendant of possession merely from the fact that the defendant is an addict.

In the present case, however, appellant admitted possession of the drugs. In fact, he introduced evidence of his addiction in the hope the jury would infer that he possessed the drugs for his own use and not with the intent to distribute them. Given appellant's admitted possession, the purpose of Instruction No. 4.36—to avoid a conviction of possession from the fact of addiction alone—was irrelevant to the defense theory. We conclude, accordingly, that the trial court did not err in refusing to give the requested instruction.

## III.

█ Appellant's final contention is derived from the trial court's lesser included offense instruction. Counsel had expressly agreed with the court's stated assumption that the defense wanted such an instruction. The formulation the court chose, without defense objection, contained the so-called "acquittal first" instruction. The trial court instructed the jury as follows:

> As to either or both counts, if you do find the Defendant not guilty, you should then consider the lesser charge of simple possession of a controlled substance. And again, you would only be considering the charge of simple possession if you find the Defendant not guilty of possession with intent to distribute.

The verdict form also reflected this instruction.[4]

█ An hour and a half after the jury had been excused to begin deliberations, the trial court proposed to send the jury home for the day. The deputy clerk reported to the court that the jury had requested five more minutes. Ten minutes later, the

---

2. *See, e.g., Mitchell v. United States*, 595 A.2d 1010, 1011 (D.C.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1303, 117 L.Ed.2d 525 (1992); *Gray v. United States*, 549 A.2d 347, 349 (D.C. 1988); *see also Adams v. United States*, 558 A.2d 348, 349 (D.C.1989) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," quoting *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988)).

3. We have no occasion here to explore the correctness or adequacy of Instruction No. 4.36 in its present form as applied to specific factual circumstances of a given case.

4. The defendant is allowed to choose, in the first instance, whether the court shall give the "acquittal first" instruction or its counterpart, the "reasonable efforts" instruction. *See Wright v. United States*, 588 A.2d 260, 261–262 (D.C. 1991). In the "reasonable efforts" instruction, the court tells the jury that it may consider the lesser included offenses if it is unable to reach a verdict on the greater offenses after making all reasonable efforts to do so. If the defendant timely requests the "reasonable efforts" instruction, the trial court must give it. *See id.* at 262. In this case, appellant did not request the "reasonable efforts" instruction and did not object to the "acquittal first" instruction when the trial court gave it the first time.

court received the following note from the jury.

> As to the lesser included offense of Possession of Heroin, we find the defendant guilty.
>
> As to the lesser included offense of Possession of Cocaine, we find the defendant guilty.

The trial court read the note to counsel, commenting that the note indicated the jury "ha[d] not paid attention to anything I said." The court proposed to respond with three actions: (1) the court would remind the jury that it was not to report verdicts on the lesser charges until it had reached unanimous verdicts on the greater ones; (2) the court would otherwise ignore the jury's note; and (3) the court would tell the jury to report back the following morning to continue deliberating as if it had reached no verdict.

Defense counsel objected, arguing that the jury had reached a verdict. In response the judge further proposed, as an additional first step, to ask the jury whether it had reached a verdict on the charges of possession with intent to distribute. "If [the foreperson] says 'Yes,' we'll take the verdict. If [the foreperson] says 'No,' then they haven't done their job yet." Neither party objected to this proposal. The court then posed the question to the jury foreperson, who answered that the jury had not reached a verdict on either of the two possession with intent to distribute charges. The judge responded:

> All right. Well, you sent me a note ... involving a verdict on the lesser count. My instructions to you, and what the verdict form tells you is I don't want you to deliberate on that count until and unless you reach a unanimous verdict on the possession with intent to distribute charge.

So, I'll excuse you for the day and ask you to return tomorrow morning, and continue to deliberate on the two counts in the Indictment, possession with intent to distribute.

And if, and only if, you find the Defendant not guilty of those counts should you then deliberate and give me a verdict on the lesser charges.

The jury returned the following morning. Deliberations continued until 3:14 p.m., when the jury found appellant guilty of both charges of possession with intent to distribute.

Appellant contends the trial court erred in the way it responded to the jury's note. He says the note indicated the jury had deadlocked or acquitted on the distribution counts and had reached verdicts on the possession counts, which the trial court should have accepted. We have held that a deadlocked jury may consider the lesser offense without first reaching a unanimous not-guilty verdict on the greater charge. *See Wright*, 588 A.2d at 262. Moreover, as appellant correctly notes, we have held that "when the jury reports a deadlock between the greater and the lesser offense, the 'acquittal first' instruction should not be given because it is impermissibly coercive." *Jones v. United States*, 544 A.2d 1250, 1254 (D.C.1988). *See also Parker v. United States*, 601 A.2d 45, 47 (D.C.1991).

Appellant argues that the jury's note reflected a deadlock, or even an implied acquittal, on the greater charges. That contention is not supported by the record. The note did not report any difficulty in reaching agreement, as is typically the case when a jury deadlocks.[5] Moreover, the period of deliberation at that point—less than two hours—was not enough in itself to suggest a deadlock. Nor did the note indicate that the jury had reached a verdict on

---

**5.** Ten minutes after the jury had asked for more time, the trial court sent the deputy clerk to find out whether the jury was ready to be excused. The jurors had been told that if they wished to communicate with the court, "[a]nything other than going to the bathroom or the water fountain," they were to "put it in writing." In an exchange—on the record—between the judge and the deputy clerk, the trial judge explained:

> All right, [the jury foreperson] misunderstood you, in other words.... [H]e said to you we have reached partial verdicts. And you told him to put it in writing; and he thought you meant the verdicts, in writing.

Thus, the jury did not initiate the communication with the court and, we infer, did not intend to indicate any difficulty in its deliberations.

the greater (intent to distribute) charges, which the verdict form plainly required before the jury was to consider the lesser (simple possession) charges. When questioned, the jury foreperson verified that no verdict had been reached on the greater charges. We conclude that no deadlock was evident and that the trial court was not plainly wrong in its assessment that, at the time the jury sent the note, it had not yet "done its job."

■ We note that in this situation defense counsel could have asked the court to clarify specifically whether the jury was deadlocked, if that was his concern. If the jury had then reported a deadlock, defense counsel could have requested—and would have been entitled to—the so-called "reasonable efforts" instruction. *See* discussion *supra* note 2; *Parker,* 601 A.2d at 48; *Wright,* 588 A.2d at 262; *Jones,* 544 A.2d

at 1254. That is not what happened in this case. Defense counsel requested neither further inquiry into whether the jury was deadlocked nor a "reasonable efforts" instruction.[6] Counsel simply—and incorrectly—insisted that the court accept conviction on the lesser offenses of possession as the jury's sole verdict.

We therefore conclude that the trial court's response to the jury's note by repeating the "acquittal first" instruction was not an abuse of discretion.

*Affirmed.*

---

**6.** We reject the government's argument that, because appellant did not object to the "acquittal first" instruction or request instead the "reasonable efforts" instruction *when the jury was first charged,* he is precluded from arguing on appeal that the court erred in repeating the "acquittal first" instruction after the jury's note. Even though the defense has initially elected the "acquittal first" instruction, it may request a "rea-

sonable efforts" instruction later, at least where the jury becomes deadlocked.

We also note that here, as in *Parker,* 601 A.2d at 48 n. 8, we have no occasion to address the question whether, given our holding in *Jones,* defense counsel could still request an "acquittal first" reinstruction after the jury deadlocks.