Michael BELTON, Appellee,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Appellant.

No. 92–7248.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 14, 1994.

Decided April 22, 1994.

Bruce P. Heppen, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, argued the cause for appellant. With him on the briefs were Robert L. Polk, Gen. Counsel, Washington Metropolitan Area Transit Authority, Gerard J. Stief, Associate Gen. Counsel, Washington Metropolitan Area Transit Authority, and Robert J. Kniaz, Deputy Gen. Counsel, Washington Metropolitan Area Transit Authority. Jeanette J. Clark, Associate Gen. Counsel, Washington Metropolitan Area Transit Authority, entered an appearance.

Frederick W. Schwartz, Jr. argued the cause for appellee. With him on the brief was Kenneth M. Trombly.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Michael Belton spent the evening of July 10, 1989 outfitted in a Batman cape, roaming

the streets of Georgetown and taunting motorists. His blood alcohol level, measured when the evening's revels came to a disastrous end, was .424 percent. (Under D.C.Code Ann. § 40–717.1 a level of .05 percent or more is prima facie evidence of being under the influence of alcohol.) Keith Brice, a bus driver for the Washington Metropolitan Area Transit Authority ("WMATA"), noticed Belton on his early evening rounds and later encountered him directly at the intersection of M St. and Wisconsin Avenue. As the bus waited at a red light before turning right onto Wisconsin Avenue, Belton approached, cursing and banging on the bus door. Because it is against standard NMATA policy for a bus driver to accept riders except at a bus stop, Brice waved Belton away. Seeing Belton move out of sight, Brice inferred that he had retreated to a position of safety on the sidewalk. In fact, however, Belton had flattened himself against the bus, evidently invisible to Brice because of the side-view mirror's "blind spot". When the light turned green, Brice began to turn onto Wisconsin, possibly—the evidence is in conflict—in the face of Belton's continued knocking on the bus door. Belton slid beneath the bus; although Brice stopped the bus before the wheels could roll over Belton, the bus's undercarriage inflicted serious injuries.

Belton filed suit in federal district court asserting negligence. At trial, he conceded facts that ordinarily prove contributory negligence, but requested and was granted an instruction on the doctrine of last clear chance. The jury ruled in favor of Belton and awarded him $619,000. WMATA argues on appeal primarily that it is entitled to judgment as a matter of law on the ground that the absence of any negligence on its part *before* Belton's peril arose bars his use of last clear chance. In the alternative, it asks for a new trial to cure error in the last clear chance instructions and asserts various other errors. We conclude that District law requires evidence of antecedent defendant negligence, but that a jury could have found such negligence, as it is understood in the Dis-

trict,[1] on the evidence here. Accordingly, we reverse and remand for a new trial with correct instructions.

\* \* \* \* \* \*

■ The district court instructed the jury on last clear chance as follows:

The question arises then whether WMATA through the actions of its bus driver had the last clear chance to avoid the accident. Where a pedestrian is in a position of peril, even by reason of his own negligence, of which he is unaware or unable to extricate himself, then an obligation arises on the part of the driver to avoid striking him, if the driver can do so by the exercise of reasonable care.

*It is not necessary that the driver had been negligent prior to the time at which he discovered or should have discovered the dangerous position in which the pedestrian had negligently put himself.* It is enough that thereafter the driver fails to utilize with reasonable care the ability which he then has to avert the pedestrian's harm.

Tr. IV at 70–71 (emphasis added).

This instruction is inconsistent with the D.C. Court of Appeals' often-repeated formula of the requirements of last clear chance:

(1) ... *the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant*; (2) ... the plaintiff was oblivious to the danger, or unable to extricate herself from the position of danger; (3) ... the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of her oblivion to it or her inability to extricate herself from it; and (4) ... the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate herself from it, but failed to do so.

*Robinson v. District of Columbia,* 580 A.2d 1255, 1258 (D.C.1990) (emphasis added and emphasis deleted). The District has hewed

---

1. The parties agree that the law of the District applies. Although federal jurisdiction arises by virtue of an interstate compact, the Washington Metropolitan Area Transit Authority Compact,

see 80 Stat. 1324, local law defines liability. See *id.* at 1350 (the Authority's liability is to be governed by "the law of the applicable signatory (including rules on conflict of laws)").

to this four-requirement formula in a long stream of cases. See *Felton v. Wagner,* 512 A.2d 291, 296 (D.C.1986); *WMATA v. Jones,* 443 A.2d 45, 51 (D.C.1982) (en banc); *Byrd v. Hawkins,* 404 A.2d 941, 942 (D.C.1979); *Hunter v. Robinson,* 294 A.2d 481, 483 (D.C. 1972) (remanding for determination of whether defendant's and plaintiff's negligence jointly "created" plaintiff's peril).

There have been decisions of this court that the plaintiff need not show antecedent negligence, *Bowman v. Redding & Co.,* 449 F.2d 956, 970 (D.C.Cir.1971) (rejecting antecedent negligence requirement); *Drapaniotis v. Franklin,* 504 F.2d 236, 237–38 (D.C.Cir.1974) (same), but these were issued *after* February 1, 1971, the date on which, by virtue of the District of Columbia Court Reorganization Act, Pub.L. No. 91–358, 84 Stat. 475, 667, our court ceased to be an authoritative expositor of District law. See *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971) (construing Reorganization Act); *Holland v. Baltimore & Ohio R.R. Co.,* 431 A.2d 597, 600 (D.C.1981) (en banc) (post-January 31, 1971, decisions of D.C. Circuit on District law not binding on D.C. Court of Appeals). Even if any pre-February 1, 1971 decisions of this circuit supported a tendency to dispense with antecedent negligence, the District's later assertion of the requirement in an *en banc* decision, *WMATA v. Jones,* 443 A.2d at 51, would control; an *en banc* decision of the D.C. Court of Appeals overrules inconsistent but previously authoritative decisions of this court on D.C. law. See *M.A.P.,* 285 A.2d at 312; *Holland,* 431 A.2d at 599.

A more recent decision of this court, *Johnson v. WMATA,* 883 F.2d 125, 129 (D.C.Cir. 1989), also held that the plaintiff need not show antecedent negligence, relying on the non-authoritative *Bowman* and *Drapaniotis* cases. The D.C. Court of Appeals' later decision in *Robinson,* however, restated the District's adherence to the requirement, undermining whatever force *Johnson* might have as an interpretation of D.C. law. Further, in *Andrews v. Wilkins,* 934 F.2d 1267 (D.C.Cir.1991), we found that a last clear chance claim failed "on the first prong of the test, as decedent was in a position of danger

by virtue only of his own actions." *Id.* at 1272.

WMATA argues that the evidence indisputably shows that Belton put himself in a position of peril the moment he leaned against the motionless bus, so that plaintiff's claim fails as a matter of law. Certainly by ordinary standards leaning against the side of a bus waiting at a red light, out of the bus driver's easy line of sight (and, indeed, evidently out of sight altogether), would seem exceedingly perilous. But the District's concept of antecedent negligence appears to allow the plaintiff to slice the transaction more finely. In *Felton,* for example, the court said in dictum that the requirement was met where plaintiff negligently crossed the street in the middle of the block and defendant negligently drove his car across the center line. See 512 A.2d at 294, 297. That the plaintiff's act created a peril regardless of defendant's conduct seemed not to trouble the court. And in *Byrd* the court thought it sufficient that the peril was created by (1) the plaintiff's having started across the street on foot in black clothing in the early hours of the morning, "only glanc[ing] in the direction of the oncoming traffic", and (2) the defendant driver's negligently failing to become aware of his presence. 404 A.2d at 942. Thus, even though one might think the plaintiff initiated his peril on his own, by stepping into the street with only a glance and dressed to be nearly invisible, and even though the driver's initial negligence seemed continuous with his ultimate failure to avoid striking plaintiff, the court found the evidence enough to reach the jury. Compare the view of antecedent negligence taken in *Rumbolz v. Wipf,* 145 N.W.2d 520, 523–24 (S.D.1966) ("The doctrine of ... 'last clear chance' ... should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident"). Thus, *if* the jury took the view that Belton's peril began only after the bus started forward to make the turn into Wisconsin Avenue, and if Brice was negligent both in starting into the turn and in persisting in it, the District's requirement would evidently be satisfied. Accordingly, we must remand for a new trial rather

than for entry of judgment in favor of defendant.

We are, we must add, quite unsure of the function of the requirement of antecedent negligence, as it seems to relate only dimly to the possible justifications of the last clear chance doctrine itself. The most commonly articulated of those justifications is the rather vague purpose of mitigating the alleged harshness of the contributory negligence doctrine. See, e.g., Malcolm M. MacIntyre, *The Rationale of Last Clear Chance*, 53 Harv. L.Rev. 1225 (1940). But it is not clear that the divisibility of the defendant's negligence into two phases, each with its own adverse impact (creating the peril, then causing the ultimate loss), necessarily correlates well with any greater fault on defendant's part. One can easily imagine hypothetical pairs of cases that are just the opposite (minor fault coupled with antecedent negligence, gross fault without antecedent negligence). Alternatively, if one reasons that the defendant's failure to take the last clear chance "sever[s] any causal connection between the plaintiff's prior negligence and his own harm", Richard Epstein, *The Temporal Dimension in Tort Law*, 53 U.Chi.L.Rev. 1175, 1192 (1986), it is hard to see that the degree of severance is affected one way or the other by defendant's antecedent negligence. And, if one argues that last clear chance may not significantly reduce victims' incentives to take care, either because the doctrine mainly benefits victims who "might not take care whatever the liability rule", Steven Shavell, *Torts in Which Victim and Injurer Act Sequentially*, 26 J.L. & Econ. 589, 591 & 599 (1983), or because even with last clear chance victims have an incentive to take care except where the injurer's taking care reduces the risk of injury almost to zero, see William M. Landes & Richard A. Posner, The Economic Structure of Tort Law 95 (1987), again the requirement of antecedent negligence seems not to fit the theory. We endorse none of these theories of last clear chance, but simply note that in relation to all of them the antecedent negligence requirement is a puzzle. Perhaps this disjunction explains why many of those jurisdictions that still recognize last clear chance impose no antecedent negligence requirement and follow the Restatement (or a similar) version. Restatement (Second) of Torts § 479. In any event, we must remand for a new trial with instructions conforming to the District's view of the doctrine.

■ WMATA makes a further argument as to the substance of last clear chance, namely, that a plaintiff cannot meet the second requirement—a showing that he was "oblivious to" or "unable to extricate himself from the position of danger"—where the only source of the oblivion or inability is his own voluntary drunkenness. WMATA cites *Pack v. Doe*, 236 Va. 323, 374 S.E.2d 22 (1988), which said that "a person who voluntarily consumes a quantity of intoxicants sufficient to produce drunkenness, drowsiness, or unconsciousness is not 'physically incapacitated'" within the meaning of Virginia's last clear chance doctrine, *id.* at 25, going on to say that "[v]oluntary intoxication does not *excuse negligence*", *id.* (emphasis added). We need not here attempt to parse Virginia's law on last clear chance. Since the doctrine presupposes that the plaintiff has been negligent, it appears to be of no moment that the negligence arose from voluntary intoxication; certainly there is no evidence that the District recognizes any such exception.

\*    \*    \*    \*    \*    \*

■ WMATA claims that the trial court allowed some inadmissible hearsay as a result of a misapplication of Federal Rule of Evidence 801(d)(2)(D), which excludes from the hearsay category admissions by a party's agent. Briefly, an officer who investigated the accident later the same evening and talked with a number of witnesses testified that the bus driver had told him that as he "started to make his turn", Belton "was either walking and/or running alongside of the bus continually banging on the bus". This contradicted the defendant's theory at trial that there was nothing to put the driver on notice of Belton's peril, and specifically contradicted Brice's trial testimony that Belton's banging stopped altogether after he waved Belton away. WMATA argues that in fact the officer was unable to say whether the statement about continued banging on the door came from Brice or from other persons the officer interviewed, and that therefore

the out-of-court declaration was not shown to have been an admission. See *Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182, 1186 (8th Cir.1981) (statement does not qualify as admission where witness cannot trace it to party against whom it was offered). The officer indeed testified that he could not separate the statements of the bus driver from ones made by other witnesses or a fellow officer, although in context the concession may have referred only to the officer's written report, which WMATA used on cross-examination.

WMATA raised no hearsay objection at trial, but plaintiff has waived the waiver by not raising defendant's failure on appeal. *Lennon v. U.S. Theatre Corp.,* 920 F.2d 996, 1000 (D.C.Cir.1990). Defendant's omission may account for the obscurity of the record. On remand, assuming proper objection by WMATA, the statement is clearly not allowable as an admission unless the officer can actually trace it to Brice.

\*   \*   \*   \*   \*   \*

■ WMATA raises a number of additional issues. Two are attacks on the sufficiency of the evidence that are independent of the details of last clear chance doctrine. The first and most substantial is a claim that under District law a property owner is liable to a trespasser prior to discovery of the trespasser only for wilful or wanton negligence, see *Copeland v. Baltimore & O. R.R. Co.,* 416 A.2d 1, 3 (D.C.1980); but see *Estrada v. PEPCO,* 488 A.2d 1359, 1360 n. 1 (D.C.1985) (dictum that even the duty not to engage in wilful or wanton negligence arises only after landowner becomes aware that trespasser is present and "in danger of immediate rather than merely possible harm"), and that no such wilfulness was shown here. We do not find the trespass rule applicable. First, it is undisputed that Brice was aware of Belton's presence before he flattened himself against the bus. Although Belton later disappeared out of Brice's line of vision, the only theory on which Belton can prevail is that Brice was on notice of the continuing risk of his presence near the bus. While a knowledge of the *general* possibility of trespassers is not enough to nullify the special rule on trespassers, W. Page Keeton, Prosser

and Keeton on The Law of Torts § 58, 394 n. 17 (5th ed. 1985), it can hardly be the case that the standard of care flickers up and down as a *specific* imminent trespasser, already discovered, moves in and out of the owner's sight.

■ Second, we doubt whether the sort of trespass committed by Belton in leaning against the bus is the type that triggers a laxer standard of care. Although the "wilful and wanton" standard has been applied in cases of trespass to personal property as well as to real property, Prosser and Keeton on The Law of Torts § 58, 393 n. 5 (collecting cases), the underlying principle seems to be that the very institution of private property carves out a domain in which the owner sets the rules, free from the constant interference of social institutions monitoring his behavior. See *id.* at 395. While a vehicle owner may rightly claim the benefit of the rule as against a trespasser who has actually occupied his vehicle, see, e.g., *Lavallee v. Pratt,* 122 Vt. 90, 166 A.2d 195 (1960) (plaintiff boarded defendant's truck), we doubt that it applies where plaintiff's trespass involves only resting his frame against the outside of defendant's bus while the latter occupies the public streets. In *Pindell v. Rubenstein,* 139 Md. 567, 115 A. 859, 864 (1921), the plaintiff child was injured by a gate falling upon him as he walked along a public sidewalk. The court, assuming that the child might have climbed on the gate, applied a standard of ordinary care, reasoning that the owners of a structure abutting a public way must anticipate that under a variety of circumstances pedestrians may take hold of the structure without fault—without passing on whether the possible gate-climbing in the case itself was without fault. Indeed, application of the special standard for trespassers to Belton would seem to unduly complicate ordinary rules relating to use of the public way. Accordingly, we think that despite the trespass plaintiff had only to prove ordinary negligence.

■ WMATA also argues that the testimony of a key eyewitness, Diane Spencer, was so self-contradictory that it cannot be considered probative under Rule 401 of the Federal Rules of Evidence; thus, again,

 

there was insufficient evidence. In response to leading questions Spencer testified at times that Belton continued to bang on the door once the turn had begun (thus alerting Brice to the hazard), while elsewhere—seemingly without coaching—she said that there was no such banging after the bus started into the turn. *General Motors Corp. v. Muncy,* 367 F.2d 493, 497 (5th Cir.1966), held that where crucial testimony was induced by leading questions and the witness many times contradicted the testimony elsewhere, the case was insufficient to get to the jury. Here, however, the disputed testimony is at least marginally supported by that of another disinterested witness, Jenaro Simpson, who testified that Belton continued to "pat" the door once the bus started to move. We think the evidence sufficient for the jury to decide that the driver was aware or should have been aware that Belton was in peril when the bus moved.

■ Finally, WMATA asserts two additional errors in the jury instructions. First, it claims that the trial court erred by instructing on the issue of contributory negligence, in the face of plaintiff's concession that he had been contributorily negligent. Although there was confusion on the point, we doubt if there was error, since plaintiff's counsel appears to have retracted the concession. In any event, in light of the necessary retrial, the issue is moot as a practical matter although not in the strict sense. *Air Line Pilots Ass'n v. UAL Corp.,* 897 F.2d 1394, 1397 (7th Cir.1990) (appellate court's decision to reverse on one ground does not technically moot alternative grounds of reversal). The only injury that could have arisen would have been defendant's being lulled into failure to offer evidence on the point, a mistake that presumably will not recur.

■ Last, WMATA complains that by questioning a witness about the "blind spot" for WMATA buses, the judge injected into the trial an issue of design defect. Since the interstate compact exempts WMATA from liability for design errors, see, e.g., *Dant v. District of Columbia,* 829 F.2d 69, 74 (D.C.Cir.1987) (§ 80 bars negligent design claims against WMATA), WMATA argues that the judge should have issued a corrective instruction explaining that there could be no such claim. Although we think the court's interjection potentially confusing to jurors, we do not think it required correction. Neither the jury instructions nor plaintiff's theory of the case (except possibly for a statement in closing argument that a WMATA witness had acknowledged the blind spot to be "a problem") raised any design issue; rather, the theory pervading the trial was a claim that the *driver* was negligent for failing to assure Belton's safety in the face of his knowledge of the blind spot. There was therefore no need for a corrective instruction.

The judgment is

*Reversed and remanded.*