**DISTRICT OF COLUMBIA, Appellant,**

v.

**Barbara J. ROBINSON, Appellee.**

**No. 92–CV–164.**

District of Columbia Court of Appeals.

Argued April 4, 1994.
Decided July 21, 1994.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, were on the brief, for appellant.

Gerald I. Holtz, Washington, DC, for appellee.

Before STEADMAN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This case is before us a second time following our reversal of a directed verdict in favor of defendant-appellant, the District of Columbia, see *Robinson v. District of Columbia*, 580 A.2d 1255 (D.C.1990) (*Robinson I*), and a subsequent jury verdict in favor of plaintiff-appellee. Plaintiff was injured when she was struck by a police van as she paused in the middle of a two-way street while attempting to cross outside the designated crosswalk.

Although the trial judge directed a verdict against plaintiff on the issue of contributory negligence (for failure to use the crosswalk), the judge submitted the case to the jury on the issues of primary negligence of the District's employee and last clear chance. The jury found in favor of plaintiff on both issues. On appeal the District, while not disputing primary negligence, argues that the judge should have directed a verdict in its favor on last clear chance because the evidence, in its view, established as a matter of law that plaintiff's negligence consisted not just of the initial failure to use the cross-walk, but also of her continuing failure—up to the point of the accident—to keep a proper lookout, in violation of District of Columbia traffic and pedestrian regulations.[1] Alternatively, the District argues that on this evidence it was entitled to the following jury instruction which it requested, but which the trial judge declined to give:

> If you find that the plaintiff's negligence continued to the moment of the accident and concurred with that of the defendant, then the plaintiff cannot recover under the last clear chance doctrine and you must find for the defendant.

This principle of "concurrent negligence" finds no apparent reflection in the elements of the last clear chance doctrine as formulated in this court's decisions. As set forth most recently in *Robinson I*, those elements are as follows:

> (1) ... the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) ... the plaintiff was oblivious to the danger, or unable to extricate herself from the position of danger; (3) ... the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of her oblivion to it or her inability to extricate herself from it; and (4) ... the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate herself from it, but failed to do so.

580 A.2d at 1258 (quoting *Felton v. Wagner*, 512 A.2d 291, 296 (D.C.1986)).[2] The District

---

1. *See* 18 DCMR § 2304.2 (1987); *Roberts v. Capital Transit Co.*, 76 U.S.App.D.C. 367, 368, 131 F.2d 871, 872 (1942) ("[t]he traffic laws of the District of Columbia and the decisions of this court impose on a pedestrian crossing a street in the middle of the block the duty of looking to avoid being hit").

2. In *Robinson I*, we clarified the fourth element of this formulation by holding that "it pertains to a defendant who, with means available to him, could have avoided injuring the plaintiff after he became aware of, or reasonably should have become aware of, the danger and the plaintiff's inability to extricate himself from it." 580 A.2d at 1258–59.

nevertheless describes the concurrent negligence principle as an exception to the doctrine of last clear chance, one that is compatible with the elements stated above and recognized implicitly by decisions in this jurisdiction.[3] Equally important, it has the overwhelming support of the commentators and of decisional authority elsewhere as applied to a case, which this concededly is, where the defendant never *actually* became aware of the plaintiff's perilous condition in time to avert the accident. *See Robinson I,* 580 A.2d at 1258. For example, as Prosser has stated:

> In another group of cases, the plaintiff's situation is not one of true helplessness, and he is still in a position to escape, but his negligence consists in failure to pay attention to his surroundings and discover his own peril.
>
>   \*    \*    \*    \*    \*    \*
>
> [In such a case, if] the defendant does not discover the plaintiff's situation, but merely might do so by proper vigilance, it is obvious that neither party can be said to have a "last clear" chance. The plaintiff is still in a position to escape, and his lack of attention continues up to the point of the accident, without the interval of superior opportunity which has been considered so important. The plaintiff may not reasonably demand of the defendant greater care for his own protection than that which he exercises himself. Accordingly, the nearly universal rule is that there can be no recovery.

PROSSER & KEETON, THE LAW OF TORTS § 66, at 466–67 (5th ed. 1984).[4]

We assume, for the sake of argument in this case, that concurrent negligence is an exception to the doctrine of last clear chance in this jurisdiction. We do so despite the conceptual difficulty of harmonizing the exception with the *disjunctive* treatment by our decisions of two classes of plaintiffs: the plaintiff who is "oblivious to the danger" in which she finds herself; and the plaintiff who is "unable to extricate herself" from that position of danger.[5] The concurrent negligence exception would let the former class of plaintiff recover only if she was "non-negligently oblivious," that is, if her negligence which jointly brought about her condition of peril had somehow terminated or come to a rest.[6] As she would then be conceptually indistinguishable from the plaintiff who is "unable to extricate herself" from the danger, one can legitimately ask whether the

---

3. *See, e.g., Heinecke v. Western Union Telegraph Co.,* 156 A.2d 143, 144 (D.C.1959) (defendant liable only if he had a "superior opportunity to avoid the harm"); *Jenkins v. Young,* 135 A.2d 318, 320 (D.C.1957) (last clear chance inapplicable because "[t]he negligence of both parties concurred in bringing about the result"). The District also sees the exception as implicit in the following standard explanation of the last clear chance doctrine: "[It] presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident." *Dean v. Century Motors,* 81 U.S.App.D.C. 9, 10, 154 F.2d 201, 202 (1946).

4. *See also* RESTATEMENT (SECOND) OF TORTS § 480, at 535 (1965) ("A plaintiff who, by exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant (a) knows of the plaintiff's situation ..."); 4 HARPER, JAMES AND GRAY, THE LAW OF TORTS § 22.13, at 369 (2d ed. 1986) ("Where both plaintiff and defendant are negligently unaware of the impending peril but plaintiff could have saved himself as long as defendant could have saved him, most American courts and the American Law Institute rule out last clear chance").

5. We have said, for example, that "[t]he requirement that plaintiff be unable to extricate himself from his position of danger *is dispensed with* when he is oblivious to such danger." *Jenkins,* 135 A.2d at 319 (emphasis added). In *Byrd v. Hawkins,* 404 A.2d 941 (D.C.1979) (per curiam), we found the second element of last clear chance (plaintiff's obliviousness *or* inability to extricate himself) met for purposes of evidentiary sufficiency by the plaintiff's testimony simply that "he was oblivious to [the presence of] appellee's car until a moment before impact." *Id.* at 942.

6. *See, e.g., Connolly v. Steakley,* 165 So.2d 784, 786 (Fla.App.1964) ("the plaintiff can invoke the doctrine only if the plaintiff's negligence terminated, or culminated in a situation of peril from which the exercise of due care on the plaintiff's part would not thereafter extricate him ..."), *cert. discharged,* 197 So.2d 524 (Fla.1967); *Poli v. Castleberry,* 44 A.D.2d 591, 353 N.Y.S.2d 239, 240 (1974) ("There must be an interval or time sequence during which the deceased's act of negligence is complete and in which the defendant has an opportunity to avert the disaster").

District's exception does not delete "oblivious[ness]" from our doctrine as a condition permitting recovery if the other requirements of last clear chance are met. Only the *en banc* court could effect that change. It is unnecessary for us to pursue this discussion further, however, because even if we recognize application of the concurrent negligence exception to this case, we conclude that we are unable to reverse the judgment in plaintiff's favor.

■ *First,* the District is mistaken in contending that, on the evidence presented, no trier of fact reasonably could have found plaintiff to have heeded her duty to keep a proper lookout. Viewing the evidence in the light most favorable to plaintiff, she began crossing the street after she looked to her left and saw that any traffic approaching from that direction had stopped for a red light. She also looked across the street and slightly to her left as she crossed, and saw the police van ascend a ramp leading into the street at the end of which was a flashing red light that would require the van to stop before continuing. She then crossed to the yellow dividing strip in the middle of the street, where she looked to the right to see if traffic was coming from that direction. As she looked to the right she was struck by the police van, which had turned left into the street at a forty-five-degree angle. Plaintiff's admission that she was not "concerned about [the van] as [she] began to walk across the street ... [b]ecause of the [flashing] stop light there" seems to us to present a classic jury issue as to whether she was negligent in not continuing to watch the van rather than (or in addition to) attending to the danger of approaching traffic from the right. *See, e.g., Elam v. Ethical Prescription Pharmacy, Inc.,* 422 A.2d 1288, 1290 (D.C.1980). The District's argument for judgment as a matter of law is therefore unpersuasive.

■ *Second,* assuming that the District was entitled to its requested instruction on concurrent negligence, we are able to say with fair assurance on this record that the omission did not affect the jury's verdict. *See R. & G. Orthopedic Appliances & Pros-*

*thetics, Inc. v. Curtin,* 596 A.2d 530, 540 (D.C.1991) (setting forth standard for harmless error in civil case). In addition to directing a verdict against plaintiff on contributory negligence for her failure to use the designated cross-walk, the trial judge instructed the jury at length regarding plaintiff's "continuing duty" to "make reasonable observations" as she crossed the street. The judge first explained the duty of either a driver or a pedestrian who is about to use a street or highway

> to keep a proper lookout and make reasonable observations as to traffic and other conditions which confront that person, in order to protect all people using the roadways. What observations should be made and what should be done for one's own safety are matters which the law doesn't attempt to regulate in detail, except that it does place on a person the continuing duty to use ordinary care to avoid an accident.
>
> The fact that one who has a duty to look testifies that he or she did look but didn't see that which was plainly there to be seen, is of no legal significance. The requirement imposed by law is to look effectively. One who looks and doesn't see that which is plainly there to be seen is as negligent as one who doesn't look at all.

With respect to a pedestrian specifically, the judge again explained that,

> before attempting to cross a street, it's the pedestrian's duty to make reasonable observations to learn the traffic conditions confronting her, and to try to make a sensible decision whether it's reasonably safe to attempt a crossing. What observations the pedestrian should make and what should be done for her own safety while crossing the street are matters which the law doesn't attempt to regulate in detail, except that it, again, does place on the pedestrian the continuing duty to exercise ordinary care to avoid an accident.

Except for a short intervening instruction on *respondeat superior,* the charge on "continuing duty" came immediately after the court's instruction on last clear chance.[7] More importantly, the instruction regarding plaintiff's continuing duty to keep a lookout

---

7. In addition to oral instructions, the trial judge gave the jury a booklet of written instructions, but no one asserts that they included any material beyond the instructions read to the jury.

*could only have related to application of last clear chance* to this case. The jury had already been told that plaintiff was contributorily negligent as a matter of law, so that all that remained for its decision were the two issues of defendant's primary negligence (on which plaintiff's duty to keep a lookout had no bearing) and last clear chance—or whether defendant, despite plaintiff's negligence, had proximately caused her injury after all.[8] Thus, assuming as we must that the jury decided whether plaintiff had obeyed her duty to keep a proper lookout, its answer is reflected in the verdict on last clear chance. The fourth element of that doctrine, as explained to the jury, asked whether the defendant with the means available to him "could have avoided injuring the [p]laintiff after becoming aware of the danger and the [p]laintiff's *inability to extricate herself from it,* but failed to do so" (emphasis added). The jury's affirmative answer to this, in light of the instruction on continuing duty, is wholly inconsistent with the possibility that it found she had been "oblivious" through her own fault. Consequently, the judge's failure to instruct expressly that plaintiff's continuing or concurrent negligence in the form of failure to keep a lookout for traffic would bar a verdict for her on last clear chance, was harmless error.

*Affirmed.*

STEADMAN, Associate Judge, dissenting:

I cannot agree that the failure to give the District's requested instruction on last clear chance was harmless.[1] That issue was central to the litigation. The written instructions, which were contained in a booklet carried to the jury room, specifically highlighted the last clear chance instruction, with a heading in capital letters. The instruction particularly relied on by the majority, which is Standardized Civil Jury Instructions for the District of Columbia, No. 7–13 (1981), was contained in another section of boilerplate instructions dealing with automobile cases, and was separated from the last clear chance

instruction by standard instruction 6–1 on vicarious liability and standard instructions 7–1, 7–2, and 7–3, which deal with the duties of both the motorist and pedestrian or with the motorist alone.

It has been rightly said that "[t]he application of the doctrine [of last clear chance] has been attended with much confusion." PROSSER & KEETON, THE LAW OF TORTS § 66 at 464 (5th ed. 1984). Its nuances are difficult even for lawyers and judges to grasp. I think this jury was entitled to have an instruction on last clear chance that accurately and completely set forth the applicable law and not be expected to make the implicit and subtle link between clearly separated instructions that the majority assumes it did.[2]

---

8. As the judge had instructed the jury, plaintiff could not recover if "her negligence is a proximate cause of her injury."

1. I do agree with the majority that the District was not entitled to a directed verdict on the issue of last clear chance.

2. On the merits, I simply observe, as the majority notes, that powerful authority exists in support of the District's position, which I am not convinced is precluded by our prior decisions.